**J. H. REYNOLDS et ux., Appellants,**

**v.**

**The STATE of Texas, Appellee.**

**No. 7650.**

Court of Civil Appeals of Texas.

Texarkana.

April 27, 1965.

Rehearing Denied May 18, 1965.

Mike McKool, McKool & McKool, Dallas, for appellants.

Waggoner Carr, Atty. Gen., William Pool, Asst. Atty. Gen., Austin, for appellee.

FANNING, Justice.

This is a condemnation case brought by the State of Texas against J. H. Reynolds and wife, for the taking for highway purposes of 7500 square feet of commercially zoned property on Harwood Street in the City of Dallas. The property taken was being used by Reynolds and wife as a residence and also for a sign painting business. The State's authority to condemn was admitted and the only dispute between the parties was the market value of the property taken.

A jury in response to the single special issue submitted found the market value of the land and improvements in question on August 15, 1962 (the date of the taking) to be $12,500.00. Judgment was rendered awarding appellee the condemned land excepting certain mineral rights stated in the judgment, and awarding appellants judgment for $1,000.00, being the difference between the commissioner's award of $11,-500.00 deposited in the registry of the court and withdrawn by appellants, and the jury verdict of $12,500.00. Appellants Reynolds and wife have appealed.

Appellants by their points 1 to 4, inclusive, contend that the trial court abused its discretion and erred, over the objections of appellants, in not permitting Levy, the real estate appraisal expert of appellants, to introduce in evidence the amounts of four certain sales hereinafter referred to. By their 5th point appellants contend that the trial court abused its discretion and erred, over objections of appellants, in not permitting the said expert witness Levy, to testify that the gross multiple of the sales in points 1 through 4 confirmed and supported his opinion and was the basis of his opinion. By their 8th point appellants contend that

the verdict of the jury and judgment of the court is wholly inadequate and insufficient.

Appellants' value witness, Dan Levy, after duly qualifying as a real estate appraisal expert and after testifying as to his knowledge and familiarity with the subject property and surrounding areas, testified that the subject property was zoned C, commercial, and described the house located on the lot as being a one-story frame house, containing 1170 square feet, about 38 or 40 years old, and as one needing paint and general maintenance. He testified that the property at the time of the taking was being used as a residence and as a place for the sign painting business of Reynolds, and it was his opinion that the property could best be utilized by a sign painting company, an electrical contractor or a plumber. He further stated that in the area of subject property several land users had removed old residences and replaced them with commercial buildings and that the subject building could be replaced by a building which would have more utility, etc.

Levy used the cost approach to value the subject improvements and it was his opinion that the depreciated value of the improvements on Aug. 15, 1962, was $3,500.00.

Levy, in establishing the value of the subject land, used the market approach and in doing so he used sales in the area to determine the per square foot value of the land. He further testified that he used these sales to place a value upon the land only exclusive of the improvements. The value Mr. Levy placed on the subject land only was $18,750.00, or $2.50 per square foot.

To substantiate his land only value of $2.50 per square foot assigned by Levy to subject land, he attempted to testify to nine sales of property in Dallas, Texas, which Levy considered comparable to subject land. Five of these sales were admitted into evidence and four were excluded upon objection by appellee.

Levy was not a party to any of these nine sales and his knowledge of these sales came from hearsay and such nine sales were not introduced in evidence as independent substantive evidence of the value of the properties sought to be compared with the subject property. Appellants sought to introduce evidence on these nine sales, on direct examination of the value witness Levy (by hearsay) to give an account of the factual basis upon which he founded his opinion on the issue of value of the real estate in controversy.

The four sales excluded by the trial court are discussed as follows:

Sale 1. Grandee to Ivy. A house and lot, 4 blocks from subject property, zoned C–2 (a different zoning than subject property). The improvement on said property was a two story rooming house, containing in excess of 2000 square feet, was inhabited, occupied and produced income. The house on the sale property was not comparable and similar to the house on subject property. By bill of exception Levy indicated that he considered that said rooming house had no value and might have been a liability to the land and that he used the entire consideration for the sale, $11,500.00 ($1.90 per square foot) in arriving at his value for subject land only.

Sale 2. Wyche to Croy and Croy. A house and lot 3½ blocks from subject property. Levy did not testify that this was a free and voluntary market transaction nor that he considered it as such. The improvement was a two-story house which was still standing at the date of the trial. There was no testimony that this improvement was comparable and similar to subject improvement. By bill of exception the witness Levy indicated that the total consideration for this sale was $13,500.00, that he considered the improvement to be worth $1250.00 which in his opinion would leave $12,250.00 for the land ($2.10 per square foot). This latter amount he then used in placing a value on subject land only.

Sale 3. Manning to Blair. A corner lot with house at Corsicana and Park with same zoning as subject property. The sale took place on March 4, 1957, which is 5½ years prior to the date of taking in subject cause. The witness Levy did not testify as to any confirmation of the consideration paid nor as to the sale being a voluntary market transaction. The improvement on the property was a two-story, frame house, twice as large as subject house, which improvement remained on the property close to two years after the sale. The house was later removed and the property thereafter was used as a parking lot. By bill of exception Levy testified that the consideration was $20,000.00 and this would be $4.51 per square foot for the land and the improvements. Levy did not attempt to assign separate values to the land or the improvement. Levy used the total consideration in arriving at the value of the subject land only.

Sale 4. City of Dallas to Dallas Scottish Rite Temple Association. An unimproved tract zoned M–1 (manufacturing) at the corner of Harwood and Canton which sold on April 16, 1956, which is six years and four months prior to the date of taking in subject cause. There was no testimony that there was any probability that the zoning of subject tract would be changed in the foreseeable future from C–1 to M–1. No witness in the cause testified that there had been no change in land values in this area or in Dallas County during the period from April 15, 1956 (the date of this sale) to August 15, 1962, (the date of taking in this cause). By bill of exception the witness Levy gave the consideration for this sale as $35,000.00 or $5.07 per square foot.

The witness Levy in the bill of exceptions also testified to the effect that each of the four excluded sales were part of the basis of the opinion reached by him and confirmed and backed up his valuation of the subject property.

■ Appellants' expert value witness Levy testified that in his opinion the value

of the subject property at the time of the taking was $22,250.00. Appellee's expert value witness Weiss testified that in his opinion the value of the subject property at the time of the taking was $11,500.00. The jury in response to the single issue submitted found such value to be $12,500.00. The verdict of the jury was within the range of the values testified to and it is our holding that the evidence was sufficient to sustain such finding. In this connection see the following authorities: Housing Authority of City of Dallas v. Shambry, Tex.Civ.App., 252 S.W.2d 963, wr. ref. n. r. e. (1952); City of Houston v. Charpiot, Tex.Civ.App., 292 S.W.2d 677 (1956). It is our further holding that from an examination of the record as a whole that the verdict and judgment are not inadequate. Appellants' 8th point is overruled.

■■  We think it is clear that the trial court did not abuse its discretion in not admitting Levy's testimony with reference to sale No. 4 which was 6 years and 4 months prior to the subject taking and sale No. 3 which was 5½ years prior to the subject taking, on the ground of remoteness in point of time, irrespective of any other grounds upon which the action of the trial court might be sustained. In this connection see Rayburn, Texas Law of Condemnation, Sec. 140(1), p. 425, wherein it is stated in part as follows:

"It is settled law, that where testimony is presented showing that closely similar property in the immediate vicin‑ity of the subject land has sold on the general market, that these sales prices are ADMISSABLE, as bearing upon the question of market value, if they are not too remote in point of TIME.

\* \* \* \* \* \*

"*It is probable that the five years mentioned in this section, is about the extreme limit of reasonable time that might be thrown on this type of inquiry, as to a bearing on market value.* \* \* \*" (Emphasis added).

■  Sales 1 and 2 were not too remote in point of time and pose closer questions as to their admissibility. They pose the rather difficult problems which are discussed by Rayburn, Texas Law of Condemnation, Sec. 142 pp. 430–1, which reads in part as follows:

"It is settled law in Texas, that UNIMPROVED LOTS, PARCELS, OR TRACTS of land, cannot be compared with the selling prices of IMPROVED LOTS, PARCELS, OR TRACTS of land, in the trial of a condemnation suit. This question arises most often, when the expert witnesses for either side, are questioned as to sales of properties that they may have studied in preparation of rendering their estimate and opinion of the market value of the subject land. Properties that are improved in some degree, can be compared to others improved in a lesser or greater degree, but cannot be compared with properties that have been sold, but which are not improved, but are raw, in bulk, wholesale acreage, or bodies of land that are held as unimproved entireties. This has been the law of Texas, since the decision of Chaney v. Coleman [77 Tex. 100], 13 S.W. 850, by the Texas Supreme Court, and has been re-emphasized by the Supreme Court of Texas in City of Austin v. Cannizzo [153 Tex. 324] 267 S.W.2d 808, where the court said:

" 'The property is unimproved. Prices paid for improved lots and the value assigned to improved lots in recent sales IS NOT ADMISSABLE BECAUSE NOT MEETING THE TEST OF SIMILARITY. Cheney [Chaney] v. Coleman [77 Tex. 100], 13 S.W. 850, Texas Supreme Court, 118 A.L.R. 869; and 174 A.L.R. 386.'

"It will be noticed, that this does not give any yardstick as to what degree of improvement is necessary, to either make the properties compared either

conclusively similar, or dissimilar. There are close questions that can arise as to whether real estate is actually improved or not. *This is one of those questions that is no doubt left to the discretion of the trial courts, and this would be particularly apt in the close cases.*

"Where the property is clearly unimproved, or clearly improved, no difficulties are encountered. It is where a tract has a 'shack' of little, or no value on it, or an otherwise unimproved tract of land, has some improvement, such as a paving, either in its entirety, or street, or alley paving, that might have cost money, and might even have cost more money than a building or other structure, that the close questions arise.

\*    \*    \*    \*    \*    \*

"In City of Dallas v. Hubbard, 274 S.W.2d 165 (Civ.App.) (n.w.h.), it was held, that improved property that had houses and structures on it should be compared at least in degree with other properties that had similar improvements on it also." (Emphasis added).

■ Assuming without deciding, that Levy's testimony as to sales 1 and 2, may have been admissible, and further if we should be mistaken in our view that Levy's testimony as to sales 3 and 4 was properly excluded by the trial court, it is our firm view that the exclusion of Levy's testimony as to said sales 1, 2, 3 and 4, would not constitute reversible error under the whole record in this cause for the reasons and under the authorities hereinafter referred to.

It must be remembered that five sales testified to by Levy as being comparable were admitted in evidence and Levy was permitted to fully develop the sales price, etc. of these sales. One of these sales (Hanson to Rutchik) was located on the same street as subject property about 2 blocks away, another of the sales related by Levy (Smith to I.B.E.W.) was located on the same street about 100 feet away. The per square foot

selling prices of the sales introduced in evidence by hearsay evidence of Levy were $1.20, $1.25, $1.50, $3.70 and $5.75 per square foot. The per square foot value ascribed to the land only in subject tract by witness Levy was $2.50. The per square foot selling prices of appellants' sales excluded from evidence above referred to were $1.90, $2.10, $4.51 and $5.07.

The qualifications of appellants' value expert witness Levy were not challenged and Levy was permitted to testify in detail as to the methods he used in appraising subject property and to the fact that he examined and analyzed sales information in reaching his opinions of value of the land only. He testified fully in regard to the five sales above referred to and gave limited information in regard to the other four. He was allowed to testify as to his opinion of the value of the property condemned. The only evidence excluded was hearsay evidence in regard to the four sales in question which only form a part of the substructure supporting Levy's opinion of value and was not independent evidence of value. State v. Oakley, 163 Tex. 463, 356 S.W.2d 909 (1962). The qualifications of Levy, the appraisal expert, were not challenged and the exclusion of the sales data in question in the four said sales would not cause the rendition of an improper verdict under the record as a whole in this cause. Rule 434, Texas Rules of Civil Procedure. In this connection see State v. Scarborough, Tex.Civ.App., 383 S.W.2d 839, wr. ref., n. r. e. (1964), wherein it was stated in part as follows:

"The appraiser testified that he had examined land values in the vicinity including sales which he took into consideration in forming an opinion. The jury was permitted to hear the appraiser's opinion of the value of the Scarborough farm residue; excluded only was the appraiser's hearsay testimony of the three sales transactions. The hearsay nature of the land sales made them admissible only to reveal a part of the substructure supporting the ap-

praiser's opinion of value. State v. Oakley, 163 Tex. 463, 356 S.W.2d 909. The appraiser was shown to be qualified, skilled and experienced though cross-examination was designed to arouse doubt of the appraiser's unbiased attitude. The hearsay evidence could not properly be considered by the jury as proof that a sale of the propties had occurred, or the properties had sold for the prices stated, or as evidence of the market value of the Scarborough tract (State v. Oakley). The function of the excluded evidence was to make known to the jury what the appraiser said he used in part as a basis of his opinion of value. The excluded evidence goes to the appraiser's qualification to express an opinion. And as previously noticed, qualification was not denied or seriously challenged.

"This court is not convinced that the absence of the excluded testimony, it being cumulative of that showing the appraiser's qualification, secondary in nature and limited in effect, probably caused the rendition of an improper verdict. Rule 434. This case is distinguishable from those such as City of Austin v. Cannizzo, 153 Tex. 324, 267 S.W.2d 808; City of Houston v. Pillot, Tex.Civ.App., 73 S.W.2d 585, reversed on other grounds, (Tex.Comm.App.) 105 S.W.2d 870, etc., where non-hearsay evidence of comparable sales is the subject of discussion. The State correctly points out that the trial judge did not declare the basis of his ruling. However, if he was prompted to rule by misconception, such mistake is unimportant as excluding the sales was not calculated to cause the rendition of an improper verdict."

The case of Hays v. State, Tex.Civ.App., 342 S.W.2d 167, wr. ref., n. r. e. (1960), relied on by appellants, which held that the exclusion of *all* of one party's comparable sales was an abuse of discretion and constituted reversible error, is deemed not to be in point with the facts in the case at bar.

Appellants' points 1 through 5 are overruled.

Appellants' remaining points have been considered and are overruled.

Finding no reversible error in the record the judgment of the trial court is affirmed.