Affirmed and Opinion filed February 20, 2007








Affirmed and Opinion filed February 20, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00080-CV

____________

 

THE STATE OF TEXAS, Appellant

 

V.

 

TERI N. REINA, JAMES D. REINA, AND
CATHERINE L. DANNA, Appellees

 



 

On Appeal from the County
Court at Law No. 1

Harris County, Texas

Trial Court Cause No. 792,503

 



 

O P I N I O N

This is a condemnation case in which the State of Texas
appeals from the trial court=s judgment in favor of the landowners. 
The State contends the trial court abused its discretion by imposing time
limitations on the parties in the middle of trial and by admitting evidence of
remote comparable sales used by appraisers for the landowners in computing the
fair market value of the condemned land.  We affirm. 








I.  Factual
and Procedural Background

In the spring of 2003, the State of Texas, through its
agent the Texas Department of Transportation (hereinafter  ADOT@), began
condemnation proceedings on property located in Houston near the intersection
of North Post Oak and IH-610 as part of the IH-610 expansion.  Three adult
siblings, appellees Teri Reina, James Reina, and Catherine Danna (collectively
referred to as Athe Reinas@), owned this
property.  The property was divided into three separate parcels, with each
sibling owning an interest in each parcel.  The property, consisting of a total
of 2.966 acres, included a restaurant, a catering business, a veterinary
clinic, and two billboards.  

The special commissioners= hearings for the
condemnation proceedings were held in July and August 2003, and the
commissioners assessed $3,250,901, $2,640,379, and $1,507,135 as the damages to
be paid by the State to the Reinas for the condemnation of these three
parcels.  The Reinas filed objections to the findings of the special
commissioners= awards, triggering a trial de novo in the trial court
below.  The sums awarded were then deposited into the registry of the court. 
The Reinas withdrew the funds shortly thereafter.  The State filed a motion to
consolidate the three cases for the purpose of valuation and trial. The trial
court granted the motion.








On the day of the final pre-trial conference, just before
the trial de novo was to begin, the State filed a motion to exclude any
testimony of the Reinas= expert witnesses David Bolton and Tom
Edmonds in reference to billboard sales more than five years old.  The trial
court heard this motion along with other matters at the final pre-trial
conference.  During this pre-trial conference, the parties announced that they
had reached an agreement as to the admissibility of certain exhibits, some of
which contained information relating to billboard sales more than five years
old.  The parties stipulated that these exhibits were admissible, and the trial
court admitted them into evidence.  After opening statements, the trial court
denied a motion by the State to set aside its prior agreement as to the
admissibility of the exhibits relating to the billboard sales.  The trial court
declined to remove these exhibits from the trial evidence and later admitted
testimony regarding the billboard sales.

Before the jury trial commenced, the trial court and the
parties anticipated that the trial could be completed in four days. When,
during trial, it became apparent that the trial would not be concluded in that
time frame, the trial court requested that each side=s counsel state
how much time would be needed to complete the trial.  After conferring with the
parties, the court imposed time limits as to the total amount of time each side
would have to present evidence and closing argument.  When the trial court imposed
these limits, the Reinas already had presented some of their case. As a result
of the time limitations, by the time of closing arguments the State had only
six minutes remaining and could give only a brief closing argument.  At the
conclusion of the trial, the jury returned a verdict in favor of the Reinas for
$9,398,532.  

II.  Issues and Analysis

On appeal, the State asserts the trial court abused its
discretion (1) by imposing time limitations on the parties in the middle of
trial and (2) by admitting evidence of remote comparable sales used by
appraisers for the landowners in computing the fair market value of the
condemned land.  We review the State=s complaints under
the familiar abuse-of-discretion standard.  Under this standard, a trial court
will be found to have abused its discretion if it acted in an arbitrary and
unreasonable manner.  Joe v. Two Thirty Nine Joint Venture, 145 S.W.3d
150, 161 (Tex. 2004).  There is no abuse of discretion, however, simply because
a trial court may have decided a matter within its discretion differently than
an appellate court would have.  Id. at 242.  When reviewing matters
committed to the trial court=s discretion, a court of appeals may not
substitute its own judgment for that of the trial court.  See Flores v.
Fourth Court of Appeals, 777 S.W.2d 38, 41 (Tex. 1989). 








A.      Did the trial court abuse its discretion by
limiting the State=s trial time? 

In its first issue, the State contends the trial court
abused its discretion by imposing time limitations in the middle of trial. 
Thus, we begin by examining the circumstances surrounding the trial court=s decision to set
time limitations in this case.

The Reinas began their case-in-chief by calling the State=s appraisers,
followed by their own appraisers.  During the lunch break on the fourth day of
trial, the trial court met with counsel for both parties outside the presence
of the jury to discuss how much time each side needed to conclude the trial,
including closing arguments.  The record reflects the following exchange
between the trial court and the parties: 

The Court:                       The
Court, like pulling teeth, has extracted from both sides how much additional
time they need. My adding up the individual additional time that they need, the
Landowners need an additional three and a half hours, plus thirty minutes for
closing, that the Court has put on the clock. 

Reinas= counsel:              As the Court
noted, subject to what comes out in these number of hoursCI think they said four hoursCof their direct examination of the
appraisal witnesses. 

The Court:                       Two
hours of that was allocated toward the recross of these witnesses that have
already been on the stand for a half day apiece.  In other words, these two
witnesses will be on the stand for a total of a half day from you, two hours
from them, and then another hour of recross from you.  I think that every
syllable these people could shed, every ray of hope, of light, or shadow of
darkness could have been examined in this, what now adds to about a day apiece.


Reinas= counsel:              That=s what my hopes are, too, Your
Honor.

State=s counsel:               I don=t think he=s talking about the hope.

The Court:                       With
regard to that four hours for the plaintiff, the Court added up the time the
StateCnot for the plaintiff. The
Landowner.








Court added up the State=s time, came up to six and a half
hours, two hours apiece for the witnesses that have already been on the stand
for a half day apiece, that are the State=s witnesses. 

On the ultimate question of put up or shut up, the
State has asked for an additional hour, and I=m giving that to them.

Court is now going to hold the two parties to four
hours for the Landowner, seven and a half hours for the State.  That includes
thirty minutes for each side for a closing argument.  If you reserve some of
your time, you can add it to your closing, if you wish. 

All right? 

State=s counsel:               Right.

The Court:                       Okay
from the Landowner? 

Reinas= counsel:              Yes,
Your Honor. 

Neither
side lodged any objections during this exchange, and the parties affirmatively
agreed to the time limitations.  

After the Reinas finished their case-in-chief, the State
called its first witness.  When the Reinas concluded cross-examination of the
State=s first witness,
the trial court announced that the State had sixty-one minutes of trial time
remaining.  At this time, the State requested three additional hours to
complete its case-in-chief plus closing argument.  The State acknowledged that
it had underestimated the time it would need, and the State complained that it
was unfair for the Reinas to have more time overall because they had presented
most of their case before the court imposed time limitations.[1] 
The trial court, holding the State to its agreed time limitation, denied the
request for additional time. 








After the trial court refused to grant the State any
additional time, the State=s counsel continued his re-direct
examination of its first witness, concluding the examination with forty-four
minutes remaining.  During the direct examination of the State=s second witness,
the trial court informed the State that it had twenty-eight minutes remaining
and was using time allocated to closing argument.  Every five minutes for the
last hour, the trial court reminded the State of its remaining time.[2] 
Before the State began re-direct examination of its second witness, the trial
court stated that only six and a half minutes remained.  The State used thirty
seconds to conclude re-direct examination, leaving six minutes for its closing
argument.  After the State rested, the trial court, outside the presence of the
jury, expressed its concerns regarding time management: 

The Court:                       The
Court wishes to make a statement on the record concerning the time management
issue in this case.

This Court, when asked what each party needed to
complete the case, took the parties at their face value and then began to
docket and to arrange other cases to come in, because this case has, by it=s [sic] very footprint, made a
rather significant mark upon this Court=s docket, which is all right.  We are equipped to handle
that. 

By my reckoning, because we have a ratio of for
every 1 case that is tried we normally settle about 14, during the  period of
time in which this case has been tried, we would have normally tried five other
cases, maybe four, depending upon the circumstances.  So, there are a large
number of other cases we have not reached. That=s okay. We are equipped to handle that as well.

We have off weeks.  We=ll be able to catch up. Not behind in our docket at
all. We are busy, but we=re able to manage our docket.  But
it becomes very difficult to continue to postpone other cases as this begins to
build.








That=s why the Court stopped when this case began to expand in its footprint
beyond the four days that was represented to the Court this case would take, to
make everyone tell me how much additional time was needed.

I am certain that if we go back to
the time that I made that request, that I told everyone I was not going to tell you how
to manage your time.  I was not going to tell the State how much time to spend
per witness or how to do their cross-examination. Wasn=t going to tell the Landowner how
to manage their time.  

So, before my next comment, I want to give you a
context, Biblical context.  Chapter 25 of Matthew, the parable of the ten
virgins. 

[trial court recites Matthew 25:1B13]

As the Judge, I=m the one that has the lamps with the oil in it and time is
our enemy.  I feel like the State has not kept oil in its lamp.  Now we=re about to go into closing
argument where there is only six minutes left for the State to try to put down
into a form for these jurors so they can understand that case.  That=s not right.

And every five minutes, for the last hour, I think,
I have been diligent in putting into the record, AYour time is running out. Time is running out.@

I believe that at least on a 30-minute basis before
that, I kept telling the State, AYour time is running out. Your time is running out.@

I want a representation from the State that you have
not intentionally tried to cause a mistrial in this case. 

State=s counsel:               Absolutely not, Your Honor.

The Court:                       Because
it appears that from when I got your representation as to how much time that
was taken, that you have tried to bust that, and put this Court in an awkward
position of either doing an injustice to these jurors and an injustice to this
case, or sticking with what you said you could live with. Plus, I gave you
extra time on top of it.  And I=m very concerned about that. 








State=s counsel:               We made a mistake, as I
represented earlier, Your Honor. We did not accurately anticipate the amount of
time that would be necessary. As I stated earlier, the property owners used
approximately 14C14 and 2 hours. We=ve had 7 to 7 and 2 hours.

The Court:                       Now,
all of that discussion occurred Friday, when I asked you, AHow much time do you need?@

And you said to the Court, AJudge, they=ve gone that long.@

I said, AThat=s fine.  Tell me, based upon how
long they=ve gone, how much time you need?@

Do you recall that discussion?

State=s counsel:               I recall it, yes, Your
Honor.

The Court:                       Okay. 
I=m at a loss, because when I asked
you for how much time you needed, that was in the context of what had gone on
before. 

State=s counsel:               We made the mistake, again,
trying, as the Court was, to get this done as quickly as possible. We simply
made an error in judgment with regard to how much time would be necessary.  

I certainly apologize to this Court for any
inconvenience we have caused the Court. That was not our intention.  Also not
my intention, Your Honor, to upset the Court.

We are simply doing the very best we can in
uncertainCwith uncertain circumstances, to
get our case heard by this jury. And I will apologize to this Court for any
inconvenience that was created by our error in judgment.  We simply made a
mistake with regard to how much time we thought would be necessary.

The Court:                       All
right. 

 

(emphasis
added).  At the end of this exchange, the State did not make another request
for more time before closing arguments. 








With six minutes of allocated time remaining, the State
began its closing argument.  After the State had used five minutes, the trial
court stated, AFive minutes,@ and the State=s counsel
continued with its closing argument.  After another minute elapsed, the trial
court announced that the State=s time had expired, but allowed the State=s counsel to
finish his thought.  At this time, the State complained that it had
misunderstood the judge=s Afive minutes@ statement,
thinking that the trial court=s warning was as to how much time
remained, not as to how much time had been used.  The State, however, did not
object or ask for more time; rather, its counsel concluded his thought and
ended the State=s closing argument.  The trial court
allowed the Reinas an extra minute at the end of their closing argument to
balance the extra time the State was allotted.  

The State=s basic complaint is that the trial court
abused its discretion by enforcing the agreed time limits, which, the State
complains, left the State=s counsel only six minutes to present the
State=s closing
argument.  The State asserts that six minutes is not nearly enough time to make
a fair presentation to the jury.  Within this complaint, the State asserts the
trial court erred in the following respects:

(1) requesting and
enforcing rigid time limits,

(2) allowing unequal
amounts of time to the parties, 

(3) imposing time
limits in the middle of trial, 

(4) refusing the State=s request for an additional three
hours, and 

(5) limiting the State=s closing argument to six minutes. 


As a
threshold matter, we must determine, which, if any, of these complaints were
preserved for appellate review. 

1.       Did the
State preserve error on its complaint that the trial could erred in imposing
time limitations on the fourth day of trial? 








After it became apparent on the fourth day of the
proceedings that trial would not be completed in four days as the parties and
the court had anticipated, the trial court requested that each side state how
much time would be needed to complete the trial, and the State responded that
six-and-a-half hours would be sufficient.  Although the record is not
completely clear in this regard, the trial court either gave the State an
additional hour or gave the State all the time it requested, including an
additional hour the State requested beyond what it thought it needed.  The
State agreed to be bound by this time limitation (seven-and- a-half hours total)
and did not object to this limitation.  Other than its subsequent request for
an additional three hours, the State did not object to (1) the trial court=s imposition or
enforcement of firm time limits or (2) any alleged disparity in the amount of
trial time allowed as between the State and the Reinas.

If the State had a complaint regarding these matters, it
was incumbent upon the State to make its objections known at the time.  See Tex. R. App. P. 33.1; Schwartz v. Forest
Pharms., Inc., 127 S.W.3d 118, 126B27 (Tex. App.BHouston [1st
Dist.] 2003, pet. denied) (concluding that party failed to preserve error as to
court=s time limit
because he failed to object when he first knew of the time limit); Miller
Paper Co. v. Roberts Paper Co., 901 S.W.2d 593, 600 (Tex. App.BAmarillo 1995, no
writ) (finding error waived where the record failed to disclose that specific
complaint was brought to court=s attention after party previously had
represented to court that it had no problem with the relief sought).  Because
the State failed to voice any objection to the trial court=s time limitations
when imposed in the middle of trial, the State waived its complaints regarding
the first three matters.  See ante at p. 9.  We now address whether the
trial court erred by refusing the State=s request for
additional time and by allegedly limiting the State to six minutes for its
closing argument.

2.       Did the
trial court abuse its discretion in refusing the State=s request for
additional time? 








The trial court is vested with great discretion over the
conduct of the trial, and this discretion includes its intervention to Amaintain control
in the courtroom, to expedite the trial, and to prevent what it considers to be
a waste of time.@  See Dow Chem. Co. v. Francis, 46
S.W.3d 237, 241 (Tex. 2001).  In this case, the trial court exercised its
discretion on the fourth day of trial when it asked the parties to reach an
agreement on how much time each side needed to conclude the trial.  The trial
court did not exclude any witnesses or prohibit either side from re-direct or
re-cross examination; rather, when the court denied the State=s request for
additional time, the court was merely upholding a time limit to which the State
had agreed.  This case is similar to Irwin v. Atlas Truck Line, Inc., in
which Irwin complained that the trial court had abused its discretion by
depriving him of his right to make a closing argument to the jury.  517 S.W.2d
637, 640 (Tex. App.CHouston [14th Dist.] 1974, writ ref=d n.r.e.).  In
that case, after asking all counsel how much time they wanted for opening
statement and closing argument, the trial court assigned each party an
aggregate of one hour for opening statement and closing argument.  Id.  At
his request, Irwin=s counsel was warned when he had used
forty-five minutes of this time during his opening statement.  Id.  Nevertheless,
Irwin=s counsel
continued his opening statement for another fifteen minutes, leaving no time
for a closing argument.  Id.  Irwin asserted that the trial court erred
in enforcing the time limitation and preventing him from making any closing
argument.  Id.  This court held that because Irwin himself had decided
to use all of his allotted time during his opening statement, the trial court
did not abuse its discretion in enforcing the time limitation and denying Irwin
additional time for closing argument.  Id. 

Similarly, the trial court in the present case, held the
State to its prior agreement in denying the request for an additional three
hours.  The State presented no extenuating circumstances, such as a
change in trial strategy, newly discovered witnesses or evidence, or anything
else that was unanticipated at the time it agreed to the self-imposed time
limitation.  The trial court considered the effect that an extension might have
on the jury, because the trial court had informed the jurors when they could
expect their jury service to end.  In determining whether the trial court
abused its discretion, we may not substitute our judgment for that of the trial
court and we may not disturb the trial court=s decision unless
it is shown to be arbitrary and unreasonable.  See Joe, 145
S.W.3d at 161.  Taking into consideration all of the facts and circumstances
surrounding the trial court=s decision, we cannot say it was arbitrary
or unreasonable and thus we conclude that the trial court=s refusal of the
State=s request for
additional time was not an abuse of discretion. 








3.       Did the trial court abuse its discretion by
allegedly limiting the State=s closing argument
to six minutes?     

The State contends that by refusing its request for
additional time, the trial court effectively limited the State to six minutes
for closing argument, thereby denying the State the right to make a fair
presentation to the jury.  

When the State completed its evidence and was informed that
it had only six minutes left for closing argument, the State made no objection,
nor did it request additional time to close or offer any indication of what it
would have argued had it been given more time to argue.[3]
In addition, at the end of its closing argument, when the trial court
announced, AThat=s good enough,@ the State did not
object, but thanked the jurors and sat down.  Thus, as to any specific
complaint on the time limitation on closing argument, the State waived its
complaint.  See Tex. R. App. P.
33.1; Walton v. Canon, Short & Gaston, 23 S.W.3d 143, 148, 153B54 (Tex. App.CEl Paso 2000, no
pet.) (holding party failed to preserve error as to trial court=s imposition of
aggregate time limitation on each side during trial based on the parties= estimates of how
much time they needed because the party voiced no objection in the trial court);
Ray v. Pecos & N.T. Ry. Co., 88 S.W. 466, 467 (Tex. Civ. App. 1905,
no writ) (holding that appellant failed to preserve error as to limitation on
closing argument because he did not object until after closing argument was
finished and he never requested more time for closing argument); see also
Madry v. State, 200 S.W.3d 766, 772 (Tex. App.CHouston [14th
Dist.] 2006, pet. ref=d) (concluding that defendant failed to
preserve error as to his claim that trial court erred in limiting closing
argument to five minutes during punishment phase of trial because appellant
never made a record in the trial court as to the issues his trial counsel
wanted to address but could not because of the trial court=s time limitation
on closing argument).  








In any event, even if the State had preserved this issue
for review, we still would not conclude there was error.  Although the State
asserts the trial court limited the State to a six-minute closing argument, the
record does not reflect such a limitation.  The trial court did not impose a
six-minute time limit for the State=s closing
arguments.  Rather, the trial court imposed agreed-upon aggregate time limits
based on the amount of time requested by the State.  The trial court even
reminded the State when it was cutting into its closing-argument time, which
had been projected at thirty minutes.  The trial court repeatedly reminded the
State of the time remaining, and it was the State=s responsibility
to allocate its time.  Therefore, the trial court did not limit the State to
six minutes for closing argument; the State voluntarily chose to give a
six-minute closing argument by using the preceding minutes for examination of
witnesses rather than for closing argument.  Even if the State had preserved
its complaint, there would be no error.  See Walton, 23 S.W.3d at
148, 153B54 (stating that,
even if appellant had preserved complaint regarding aggregate time limit for
conduct of trial, court would be hard-pressed to find error since the time
limitations were set by the parties themselves); Irwin, 517 S.W.2d at
640 (holding trial court did not abuse its discretion in preventing party from
making closing statement because party choose to use all of his allotted time
for opening and closing for his opening statement rather than for his closing
argument).  

Having rejected all of the State=s arguments under
the first issue, we overrule that issue.

B.      Did the
trial court abuse its discretion by admitting into evidence sales of billboard
signs that were too remote in time to be used as comparable sales? 








In its second issue, the State asserts the trial court
erred in admitting evidence of billboard sales made in 1995 and 1996, which the
State claims are too remote in time to be used as comparable sales.  The Reinas= appraisal
witnesses relied on these sales to establish their estimated value of the
condemned property, a value to which the jury ultimately agreed.  The State
also contends that, even though it agreed to the admission of several different
exhibits with various information regarding these dated sales, the trial court
abused its discretion by denying the State=s motion to set
aside its stipulation. 

During the pre-trial conference, the parties agreed to
admission of several exhibits, including exhibits 33, 33A, 34, and 34A, which
are the exhibits concerning the billboard sales from 1995 and 1996.  Based on this
agreement, the trial court admitted these exhibits into evidence.  On this same
day, the State submitted a motion in limine that included a request for the
following exclusion: 

Any question, comment, or evidence
of comparable sales occurring more than five (5) years prior to or five (5)
years subsequent to the date of taking and the sales prices thereof for the
reason that such transactions are so stale and remote in time that they are
unreliable, dissimilar, lack comparability, and provide an unfair and
misleading basis for comparison to the subject property as of the date of
taking; and there have been subsequent material changes in market conditions as
compared to the date of taking and valuation herein. 

The
State also filed a motion to exclude the testimony of the Reinas= expert witnesses
David Bolton and Tom Edmonds in reference to billboard sales more than five
years old.   After admitting exhibits 33, 33A, 34, and 34A into evidence at the
pre-trial conference, the trial court granted the State=s motion in limine
as to the above item, but it did not rule on the motion to exclude. 








On the first day of trial, before opening statements, the
trial court considered, among other things, the State=s motion to
exclude the testimony of the Reinas= expert witnesses
(Bolton and Edmonds).  At that time, however, the Reinas reminded the trial
court that the parties had stipulated to the admissibility of exhibits 33, 33A,
34, and 34A, which are the exhibits concerning these billboard sales, and that
the court already had admitted these exhibits into evidence.  The trial court
did not rule at that time.  Later, however, after opening statements, but
before any witnesses were called, the State again moved to bar admission of
evidence relating to the two billboard sales referenced in these exhibits.  The
State filed a motion to set aside its agreement on grounds of mistake and
informed the trial court that it inadvertently had agreed to admission of these
exhibits at the pre-trial conference.  The trial court denied the State=s motion, declined
to remove these exhibits from the trial evidence, and admitted testimony
regarding these billboard sales.

In its appellate brief, the State acknowledges that it
agreed to the admissibility of exhibits containing information regarding the
billboard sales, but it maintains that the trial court abused its discretion by
refusing to allow the State to withdraw the stipulation. A Astipulation@ is an agreement,
admission, or concession made in a judicial proceeding by the parties or their
attorneys respecting some matter incident thereto.  Shepherd v. Ledford,
962 S.W.2d 28, 33 (Tex. 1998).  Stipulations are generally favored by trial
courts as a way of expediting litigation and generally they will be upheld
unless good cause is shown for rejecting them. Gulf Const. Co., Inc. v.
Self, 676 S.W.2d 624, 630 (Tex. App.CCorpus Christi
1984, writ ref=d n.r.e.).  Whenever possible courts should give
effect to voluntary agreements freely made by the parties.  Johnson v. Swain,
787 S.W.2d 36, 38 (Tex. 1989).

Stipulations may be modified or withdrawn, however, at the
discretion of the trial court.  Uvalde County Appraisal District v. F.T.
Kincaid Estate, 720 S.W.2d 678, 681 (Tex. App.C San Antonio 1986,
writ ref'd n.r.e.).  The decision to allow a party to withdraw a stipulation is
a matter within the sound discretion of the trial court.  We conclude that the
trial court did not abuse its discretion in refusing the State=s request to
withdraw its stipulation.  See Early v. Burns, 142 S.W.2d 260, 263 (Tex.
Civ. App. 1940, writ ref=d) (holding that trial court did not err
in refusing to set aside stipulations made by counsel for both parties in open
court); Westridge Villa Apartments v. Lakewood Bank & Trust Co., 438
S.W.2d 891, 894B95 (Tex. Civ. App.CFort Worth 1969,
writ ref=d n.r.e.) (holding
trial court did not abuse its discretion in denying party=s motion to
withdraw stipulations).  








Furthermore, even if the parties had not stipulated to the
admission of the exhibits relating to billboard sales from 1995 and 1996, we
would not conclude that admission of these exhibits and related testimony was
an abuse of discretion.  We recognize that Texas law generally discourages the
use of remote comparable sales.  See Holiday Inns, Inc. v. State, 931
S.W.2d 614, 623B24 (Tex. App.CAmarillo 1996,
writ denied) (concluding that seven years was too far removed); Reynolds v.
State, 390 S.W.2d 493, 497B98 (Tex. Civ. App.CTexarkana 1965, no
writ) (concluding that the trial court did not abuse its discretion by not
admitting testimony about two sales more than five years prior to the taking
when five more recent sales were admitted).  However, when comparable sales are
scarce, the decision of whether a sale offered to establish fair market value
is too remote in time to be admissible is left largely to the discretion of the
trial court.  See Holiday Inns, 931 S.W.2d at 623.  In Reynolds, although
two sales were not admitted because they were deemed too remote, there were
five other comparable sales on record.  390 S.W.2d at 497.  In contrast, in the
case before us, the evidence shows that the 1995 and 1996 sign site sales were
two of the four most recent sales of sign sites along IH-610 in the same area
as the billboards in question.  Even the State=s appraiser
acknowledged that the 1995 and 1996 sales warranted some consideration in
estimating the market value of the Reinas= sign site on
IH-610 in 2003.  Given the limited number of comparable sales near the Reinas= property, we
still would conclude that the trial court did not abuse its discretion in
admitting evidence of the 1995 and 1996 billboard sales, even if the State had
not entered into the stipulation in question.  See U.S. v. 320.0 Acres of
Land, More or Less in Monroe County, 605 F.2d 762, 798 (5th Cir. 1979)
(stating that, in eminent domain proceedings, sound trial practice is to admit
as many of the Amost comparable@ sales available
as is necessary to fairly permit each side to present its fair market value
argument to the jury).  We overrule the State=s second issue. 

Having overruled all issues presented on appeal, we affirm
the trial court=s judgment. 

 

 

 

/s/      Kem Thompson Frost

Justice

 

 

Judgment rendered
and Opinion filed February 20, 2007.








Panel consists of
Justices Anderson, Edelman, and Frost.









[1]  Although it appears that the Reinas may have gotten
more time merely because they had presented most of their case before the time
limitations were imposed, the record shows that the pages of examination by the
Reinas does not greatly exceed the pages of examination by the State.  In any
event, on the fourth day of trial, the trial court did not impose the time
limitations without conferring with counsel, but rather, requested that each
side state the time each side would need to conclude the trial.  Thus, at that
point, the State could have asked for more time than the amount of time it
requested, and there is nothing in the record to indicate the trial court would
not have allotted more time. 





[2]  On appeal, the State appears to contend that these
interruptions belittled and disrupted the State=s case.  However, the State never objected to the trial court=s frequent reminders regarding time, and the State did
not request that the trial court refrain from making such reminders in the
presence of the jury.  Indeed, in most cases, the State thanked the trial court
for its reminders.  In like fashion, the court gave reminders to the Reinas. 





[3]  The only time the State specifically asked for or
suggested that it needed additional time for closing argument is the point at
which the State=s counsel requested the additional three hours after
the State already had agreed to the seven-and-a-half hours.