The STATE of Texas, Appellant

v.

Teri N. REINA, James D. Reina, and Catherine L. Danna, Appellees.

No. 14–05–00080–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 20, 2007.

---

Susan Desmarais Bonnen, Austin, for appellant.

Billy C. Dyer, H. Dixon Montague, Houston, for appellees.

Panel consists of Justices ANDERSON, EDELMAN, and FROST.

## OPINION

KEM THOMPSON FROST, Justice.

This is a condemnation case in which the State of Texas appeals from the trial court's judgment in favor of the landowners. The State contends the trial court abused its discretion by imposing time limitations on the parties in the middle of trial and by admitting evidence of remote comparable sales used by appraisers for the landowners in computing the fair market value of the condemned land. We affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

In the spring of 2003, the State of Texas, through its agent the Texas Department of Transportation (hereinafter "DOT"), began condemnation proceedings on property located in Houston near the intersection of North Post Oak and IH–610 as part of the IH–610 expansion. Three adult siblings, appellees Teri Reina, James Reina, and Catherine Danna (collectively referred to as "the Reinas"), owned this property. The property was divided into three separate parcels, with each sibling owning an interest in each parcel. The property, consisting of a total of 2.966 acres, included a restaurant, a catering business, a veterinary clinic, and two billboards.

The special commissioners' hearings for the condemnation proceedings were held in July and August 2003, and the commissioners assessed $3,250,901, $2,640,379, and $1,507,135 as the damages to be paid by the State to the Reinas for the condemnation of these three parcels. The Reinas filed objections to the findings of the special commissioners' awards, triggering a trial de novo in the trial court below. The sums awarded were then deposited into the registry of the court. The Reinas withdrew the funds shortly thereafter. The State filed a motion to consolidate the three cases for the purpose of valuation

and trial. The trial court granted the motion.

On the day of the final pre-trial conference, just before the trial de novo was to begin, the State filed a motion to exclude any testimony of the Reinas' expert witnesses David Bolton and Tom Edmonds in reference to billboard sales more than five years old. The trial court heard this motion along with other matters at the final pre-trial conference. During this pre-trial conference, the parties announced that they had reached an agreement as to the admissibility of certain exhibits, some of which contained information relating to billboard sales more than five years old. The parties stipulated that these exhibits were admissible, and the trial court admitted them into evidence. After opening statements, the trial court denied a motion by the State to set aside its prior agreement as to the admissibility of the exhibits relating to the billboard sales. The trial court declined to remove these exhibits from the trial evidence and later admitted testimony regarding the billboard sales.

Before the jury trial commenced, the trial court and the parties anticipated that the trial could be completed in four days. When, during trial, it became apparent that the trial would not be concluded in that time frame, the trial court requested that each side's counsel state how much time would be needed to complete the trial. After conferring with the parties, the court imposed time limits as to the total amount of time each side would have to present evidence and closing argument. When the trial court imposed these limits, the Reinas already had presented some of their case. As a result of the time limitations, by the time of closing arguments the State had only six minutes remaining and could give only a brief closing argument. At the conclusion of the trial, the jury returned a verdict in favor of the Reinas for $9,398,532.

## II. ISSUES AND ANALYSIS

On appeal, the State asserts the trial court abused its discretion (1) by imposing time limitations on the parties in the middle of trial and (2) by admitting evidence of remote comparable sales used by appraisers for the landowners in computing the fair market value of the condemned land. We review the State's complaints under the familiar abuse-of-discretion standard. Under this standard, a trial court will be found to have abused its discretion if it acted in an arbitrary and unreasonable manner. *Joe v. Two Thirty Nine Joint Venture,* 145 S.W.3d 150, 161 (Tex.2004). There is no abuse of discretion, however, simply because a trial court may have decided a matter within its discretion differently than an appellate court would have. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 242 (Tex.1985). When reviewing matters committed to the trial court's discretion, a court of appeals may not substitute its own judgment for that of the trial court. *See Flores v. Fourth Court of Appeals,* 777 S.W.2d 38, 41 (Tex.1989).

**A. Did the trial court abuse its discretion by limiting the State's trial time?**

In its first issue, the State contends the trial court abused its discretion by imposing time limitations in the middle of trial. Thus, we begin by examining the circumstances surrounding the trial court's decision to set time limitations in this case.

The Reinas began their case-in-chief by calling the State's appraisers, followed by their own appraisers. During the lunch break on the fourth day of trial, the trial court met with counsel for both parties outside the presence of the jury to discuss how much time each side needed to con-

clude the trial, including closing arguments. The record reflects the following exchange between the trial court and the parties:

The Court: The Court, like pulling teeth, has extracted from both sides how much additional time they need. My adding up the individual additional time that they need, the Landowners need an additional three and a half hours, plus thirty minutes for closing, that the Court has put on the clock.

Reinas' counsel: As the Court noted, subject to what comes out in these number of hours—I think they said four hours—of their direct examination of the appraisal witnesses.

The Court: Two hours of that was allocated toward the recross of these witnesses that have already been on the stand for a half day apiece. In other words, these two witnesses will be on the stand for a total of a half day from you, two hours from them, and then another hour of recross from you. I think that every syllable these people could shed, every ray of hope, of light, or shadow of darkness could have been examined in this, what now adds to about a day apiece.

Reinas' counsel: That's what my hopes are, too, Your Honor.

State's counsel: I don't think he's talking about the hope.

The Court: With regard to that four hours for the plaintiff, the Court added up the time the State—not for the plaintiff. The Landowner.

Court added up the State's time, came up to six and a half hours, two hours apiece for the witnesses that have already been on the stand for a half day apiece, that are the State's witnesses.

On the ultimate question of put up or shut up, the State has asked for an additional hour, and I'm giving that to them.

Court is now going to hold the two parties to four hours for the Landowner, seven and a half hours for the State. That includes thirty minutes for each side for a closing argument. If you reserve some of your time, you can add it to your closing, if you wish. All right?

State's counsel: Right.

The Court: Okay from the Landowner?

Reinas' counsel: Yes, Your Honor.

Neither side lodged any objections during this exchange, and the parties affirmatively agreed to the time limitations.

After the Reinas finished their case-in-chief, the State called its first witness. When the Reinas concluded cross-examination of the State's first witness, the trial court announced that the State had sixty-one minutes of trial time remaining. At this time, the State requested three additional hours to complete its case-in-chief plus closing argument. The State acknowledged that it had underestimated the time it would need, and the State complained that it was unfair for the Reinas to have more time overall because they had presented most of their case before the court imposed time limitations.[1] The trial

---

1. Although it appears that the Reinas may have gotten more time merely because they had presented most of their case before the time limitations were imposed, the record shows that the pages of examination by the Reinas does not greatly exceed the pages of examination by the State. In any event, on the fourth day of trial, the trial court did not impose the time limitations without conferring with counsel, but rather, requested that each side state the time each side would need to conclude the trial. Thus, at that point, the State could have asked for more time than the amount of time it requested, and there is

court, holding the State to its agreed time limitation, denied the request for additional time.

After the trial court refused to grant the State any additional time, the State's counsel continued his re-direct examination of its first witness, concluding the examination with forty-four minutes remaining. During the direct examination of the State's second witness, the trial court informed the State that it had twenty-eight minutes remaining and was using time allocated to closing argument. Every five minutes for the last hour, the trial court reminded the State of its remaining time.[2] Before the State began re-direct examination of its second witness, the trial court stated that only six and a half minutes remained. The State used thirty seconds to conclude re-direct examination, leaving six minutes for its closing argument. After the State rested, the trial court, outside the presence of the jury, expressed its concerns regarding time management:

> The Court: The Court wishes to make a statement on the record concerning the time management issue in this case.
>
> This Court, when asked what each party needed to complete the case, took the parties at their face value and then began to docket and to arrange other cases to come in, because this case has, by it's [sic] very footprint, made a rather significant mark upon this Court's docket, which is all right. We are equipped to handle that.

By my reckoning, because we have a ratio of for every 1 case that is tried we normally settle about 14, during the period of time in which this case has been tried, we would have normally tried five other cases, maybe four, depending upon the circumstances. So, there are a large number of other cases we have not reached. That's okay. We are equipped to handle that as well.

We have off weeks. We'll be able to catch up. Not behind in our docket at all. We are busy, but we're able to manage our docket. But it becomes very difficult to continue to postpone other cases as this begins to build.

That's why the Court stopped when this case began to expand in its footprint beyond the four days that was represented to the Court this case would take, to make everyone tell me how much additional time was needed.

*I am certain that if we go back to the time that I made that request, that I told everyone I was not going to tell you how to manage your time. I was not going to tell the State how much time to spend per witness or how to do their cross-examination. Wasn't going to tell the Landowner how to manage their time.*

So, before my next comment, I want to give you a context, Biblical context. Chapter 25 of Matthew, the parable of the ten virgins.

[trial court recites *Matthew* 25:1–13]

As the Judge, I'm the one that has the lamps with the oil in it and time is

---

nothing in the record to indicate the trial court would not have allotted more time.

**2.** On appeal, the State appears to contend that these interruptions belittled and disrupted the State's case. However, the State never objected to the trial court's frequent reminders regarding time, and the State did not request that the trial court refrain from making such reminders in the presence of the jury. Indeed, in most cases, the State thanked the trial court for its reminders. In like fashion, the court gave reminders to the Reinas.

our enemy. I feel like the State has not kept oil in its lamp. Now we're about to go into closing argument where there is only six minutes left for the State to try to put down into a form for these jurors so they can understand that case. That's not right.

And every five minutes, for the last hour, I think, I have been diligent in putting into the record, "Your time is running out. Time is running out."

I believe that at least on a 30–minute basis before that, I kept telling the State, "Your time is running out. Your time is running out."

I want a representation from the State that you have not intentionally tried to cause a mistrial in this case.

State's counsel: Absolutely not, Your Honor.

The Court: Because it appears that from when I got your representation as to how much time that was taken, that you have tried to bust that, and put this Court in an awkward position of either doing an injustice to these jurors and an injustice to this case, or sticking with what you said you could live with. Plus, I gave you extra time on top of it. And I'm very concerned about that.

State's counsel: We made a mistake, as I represented earlier, Your Honor. We did not accurately anticipate the amount of time that would be necessary. As I stated earlier, the property owners used approximately 14–14 and ½ hours. We've had 7 to 7 and ½ hours.

The Court: Now, all of that discussion occurred Friday, when I asked you, "How much time do you need?"

And you said to the Court, "Judge, they've gone that long."

I said, "That's fine. Tell me, based upon how long they've gone, how much time you need?"

Do you recall that discussion?

State's counsel: I recall it, yes, Your Honor.

The Court: Okay. I'm at a loss, because when I asked you for how much time you needed, that was in the context of what had gone on before.

State's counsel: We made the mistake, again, trying, as the Court was, to get this done as quickly as possible. We simply made an error in judgment with regard to how much time would be necessary.

I certainly apologize to this Court for any inconvenience we have caused the Court. That was not our intention. Also not my intention, Your Honor, to upset the Court.

We are simply doing the very best we can in uncertain—with uncertain circumstances, to get our case heard by this jury. And I will apologize to this Court for any inconvenience that was created by our error in judgment. We simply made a mistake with regard to how much time we thought would be necessary.

The Court: All right.

(emphasis added). At the end of this exchange, the State did not make another request for more time before closing arguments.

With six minutes of allocated time remaining, the State began its closing argument. After the State had used five minutes, the trial court stated, "Five minutes," and the State's counsel continued with its closing argument. After another minute elapsed, the trial court announced that the State's time had expired, but allowed the State's counsel to finish his thought. At this time, the State complained that it had misunderstood the judge's "five minutes"

statement, thinking that the trial court's warning was as to how much time remained, not as to how much time had been used. The State, however, did not object or ask for more time; rather, its counsel concluded his thought and ended the State's closing argument. The trial court allowed the Reinas an extra minute at the end of their closing argument to balance the extra time the State was allotted.

The State's basic complaint is that the trial court abused its discretion by enforcing the agreed time limits, which, the State complains, left the State's counsel only six minutes to present the State's closing argument. The State asserts that six minutes is not nearly enough time to make a fair presentation to the jury. Within this complaint, the State asserts the trial court erred in the following respects:

(1) requesting and enforcing rigid time limits,

(2) allowing unequal amounts of time to the parties,

(3) imposing time limits in the middle of trial,

(4) refusing the State's request for an additional three hours, and

(5) limiting the State's closing argument to six minutes.

As a threshold matter, we must determine, which, if any, of these complaints were preserved for appellate review.

**1. Did the State preserve error on its complaint that the trial could erred in imposing time limitations on the fourth day of trial?**

■ After it became apparent on the fourth day of the proceedings that trial would not be completed in four days as the parties and the court had anticipated, the trial court requested that each side state how much time would be needed to complete the trial, and the State responded that six-and-a-half hours would be sufficient. Although the record is not com-

pletely clear in this regard, the trial court either gave the State an additional hour or gave the State all the time it requested, including an additional hour the State requested beyond what it thought it needed. The State agreed to be bound by this time limitation (seven-and-a-half hours total) and did not object to this limitation. Other than its subsequent request for an additional three hours, the State did not object to (1) the trial court's imposition or enforcement of firm time limits or (2) any alleged disparity in the amount of trial time allowed as between the State and the Reinas.

If the State had a complaint regarding these matters, it was incumbent upon the State to make its objections known at the time. *See* TEX.R.APP. P. 33.1; *Schwartz v. Forest Pharms., Inc.*, 127 S.W.3d 118, 126–27 (Tex.App.-Houston [1st Dist.] 2003, pet. denied) (concluding that party failed to preserve error as to court's time limit because he failed to object when he first knew of the time limit); *Miller Paper Co. v. Roberts Paper Co.*, 901 S.W.2d 593, 600 (Tex.App.-Amarillo 1995, no writ) (finding error waived where the record failed to disclose that specific complaint was brought to court's attention after party previously had represented to court that it had no problem with the relief sought). Because the State failed to voice any objection to the trial court's time limitations when imposed in the middle of trial, the State waived its complaints regarding the first three matters. *See ante* at 254. We now address whether the trial court erred by refusing the State's request for additional time and by allegedly limiting the State to six minutes for its closing argument.

**2. Did the trial court abuse its discretion in refusing the State's request for additional time?**

■ The trial court is vested with great discretion over the conduct of the

trial, and this discretion includes its intervention to "maintain control in the courtroom, to expedite the trial, and to prevent what it considers to be a waste of time." *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex.2001). In this case, the trial court exercised its discretion on the fourth day of trial when it asked the parties to reach an agreement on how much time each side needed to conclude the trial. The trial court did not exclude any witnesses or prohibit either side from re-direct or re-cross examination; rather, when the court denied the State's request for additional time, the court was merely upholding a time limit to which the State had agreed. This case is similar to *Irwin v. Atlas Truck Line, Inc.*, in which Irwin complained that the trial court had abused its discretion by depriving him of his right to make a closing argument to the jury. 517 S.W.2d 637, 640 (Tex.Civ.App.-Houston [14th Dist.] 1974, writ ref'd n.r.e.). In that case, after asking all counsel how much time they wanted for opening statement and closing argument, the trial court assigned each party an aggregate of one hour for opening statement and closing argument. *Id.* At his request, Irwin's counsel was warned when he had used forty-five minutes of this time during his opening statement. *Id.* Nevertheless, Irwin's counsel continued his opening statement for another fifteen minutes, leaving no time for a closing argument. *Id.* Irwin asserted that the trial court erred in enforcing the time limitation and preventing him from making any closing argument. *Id.* This court held that because Irwin himself had decided to use all of his allotted time during his opening statement, the trial court did not abuse its discretion in enforcing the time limitation and denying Irwin additional time for closing argument. *Id.*

Similarly, the trial court in the present case, held the State to its prior agreement in denying the request for an additional three hours. The State presented no extenuating circumstances, such as a change in trial strategy, newly discovered witnesses or evidence, or anything else that was unanticipated at the time it agreed to the self-imposed time limitation. The trial court considered the effect that an extension might have on the jury, because the trial court had informed the jurors when they could expect their jury service to end. In determining whether the trial court abused its discretion, we may not substitute our judgment for that of the trial court and we may not disturb the trial court's decision unless it is shown to be arbitrary and unreasonable. *See Joe*, 145 S.W.3d at 161. Taking into consideration all of the facts and circumstances surrounding the trial court's decision, we cannot say it was arbitrary or unreasonable and thus we conclude that the trial court's refusal of the State's request for additional time was not an abuse of discretion.

**3. Did the trial court abuse its discretion by allegedly limiting the State's closing argument to six minutes?**

 The State contends that by refusing its request for additional time, the trial court effectively limited the State to six minutes for closing argument, thereby denying the State the right to make a fair presentation to the jury.

When the State completed its evidence and was informed that it had only six minutes left for closing argument, the State made no objection, nor did it request additional time to close or offer any indication of what it would have argued had it been given more time to argue.[3] In addi-

---

**3.** The only time the State specifically asked for or suggested that it needed additional time

for closing argument is the point at which the State's counsel requested the additional three

tion, at the end of its closing argument, when the trial court announced, "That's good enough," the State did not object, but thanked the jurors and sat down. Thus, as to any specific complaint on the time limitation on closing argument, the State waived its complaint. *See* Tex.R.App. P. 33.1; *Walton v. Canon, Short & Gaston,* 23 S.W.3d 143, 148, 153–54 (Tex.App.-El Paso 2000, no pet.) (holding party failed to preserve error as to trial court's imposition of aggregate time limitation on each side during trial based on the parties' estimates of how much time they needed because the party voiced no objection in the trial court); *Ray v. Pecos & N.T. Ry. Co.,* 40 Tex.Civ.App. 99, 88 S.W. 466, 467 (1905, no writ) (holding that appellant failed to preserve error as to limitation on closing argument because he did not object until after closing argument was finished and he never requested more time for closing argument); *see also Madry v. State,* 200 S.W.3d 766, 772 (Tex.App.-Houston [14th Dist.] 2006, pet. ref'd) (concluding that defendant failed to preserve error as to his claim that trial court erred in limiting closing argument to five minutes during punishment phase of trial because appellant never made a record in the trial court as to the issues his trial counsel wanted to address but could not because of the trial court's time limitation on closing argument).

■ In any event, even if the State had preserved this issue for review, we still would not conclude there was error. Although the State asserts the trial court limited the State to a six-minute closing argument, the record does not reflect such a limitation. The trial court did not impose a six-minute time limit for the State's closing arguments. Rather, the trial court imposed agreed-upon aggregate time limits based on the amount of time requested

by the State. The trial court even reminded the State when it was cutting into its closing-argument time, which had been projected at thirty minutes. The trial court repeatedly reminded the State of the time remaining, and it was the State's responsibility to allocate its time. Therefore, the trial court did not limit the State to six minutes for closing argument; the State voluntarily chose to give a six-minute closing argument by using the preceding minutes for examination of witnesses rather than for closing argument. Even if the State had preserved its complaint, there would be no error. *See Walton,* 23 S.W.3d at 148, 153–54 (stating that, even if appellant had preserved complaint regarding aggregate time limit for conduct of trial, court would be hard-pressed to find error since the time limitations were set by the parties themselves); *Irwin,* 517 S.W.2d at 640 (holding trial court did not abuse its discretion in preventing party from making closing statement because party choose to use all of his allotted time for opening and closing for his opening statement rather than for his closing argument).

Having rejected all of the State's arguments under the first issue, we overrule that issue.

**B. Did the trial court abuse its discretion by admitting into evidence sales of billboard signs that were too remote in time to be used as comparable sales?**

■ In its second issue, the State asserts the trial court erred in admitting evidence of billboard sales made in 1995 and 1996, which the State claims are too remote in time to be used as comparable sales. The Reinas' appraisal witnesses relied on these sales to establish their estimated value of the condemned property, a

hours after the State already had agreed to

the seven-and-a-half hours.

value to which the jury ultimately agreed. The State also contends that, even though it agreed to the admission of several different exhibits with various information regarding these dated sales, the trial court abused its discretion by denying the State's motion to set aside its stipulation.

During the pre-trial conference, the parties agreed to admission of several exhibits, including exhibits 33, 33A, 34, and 34A, which are the exhibits concerning the billboard sales from 1995 and 1996. Based on this agreement, the trial court admitted these exhibits into evidence. On this same day, the State submitted a motion in limine that included a request for the following exclusion:

> Any question, comment, or evidence of comparable sales occurring more than five (5) years prior to or five (5) years subsequent to the date of taking and the sales prices thereof for the reason that such transactions are so stale and remote in time that they are unreliable, dissimilar, lack comparability, and provide an unfair and misleading basis for comparison to the subject property as of the date of taking; and there have been subsequent material changes in market conditions as compared to the date of taking and valuation herein.

The State also filed a motion to exclude the testimony of the Reinas' expert witnesses David Bolton and Tom Edmonds in reference to billboard sales more than five years old. After admitting exhibits 33, 33A, 34, and 34A into evidence at the pre-trial conference, the trial court granted the State's motion in limine as to the above item, but it did not rule on the motion to exclude.

On the first day of trial, before opening statements, the trial court considered, among other things, the State's motion to exclude the testimony of the Reinas' expert witnesses (Bolton and Edmonds). At that time, however, the Reinas reminded the trial court that the parties had stipulated to the admissibility of exhibits 33, 33A, 34, and 34A, which are the exhibits concerning these billboard sales, and that the court already had admitted these exhibits into evidence. The trial court did not rule at that time. Later, however, after opening statements, but before any witnesses were called, the State again moved to bar admission of evidence relating to the two billboard sales referenced in these exhibits. The State filed a motion to set aside its agreement on grounds of mistake and informed the trial court that it inadvertently had agreed to admission of these exhibits at the pre-trial conference. The trial court denied the State's motion, declined to remove these exhibits from the trial evidence, and admitted testimony regarding these billboard sales.

■■■ In its appellate brief, the State acknowledges that it agreed to the admissibility of exhibits containing information regarding the billboard sales, but it maintains that the trial court abused its discretion by refusing to allow the State to withdraw the stipulation. A "stipulation" is an agreement, admission, or concession made in a judicial proceeding by the parties or their attorneys respecting some matter incident thereto. *Shepherd v. Ledford*, 962 S.W.2d 28, 33 (Tex.1998). Stipulations are generally favored by trial courts as a way of expediting litigation and generally they will be upheld unless good cause is shown for rejecting them. *Gulf Const. Co., Inc. v. Self*, 676 S.W.2d 624, 630 (Tex.App.-Corpus Christi 1984, writ ref'd n.r.e.). Whenever possible courts should give effect to voluntary agreements freely made by the parties. *Johnson v. Swain*, 787 S.W.2d 36, 38 (Tex.1989).

■■■ Stipulations may be modified or withdrawn, however, at the discretion of the trial court. *Uvalde County Appraisal*

*District v. F.T. Kincaid Estate,* 720 S.W.2d 678, 681 (Tex.App.-San Antonio 1986, writ ref'd n.r.e.). The decision to allow a party to withdraw a stipulation is a matter within the sound discretion of the trial court. We conclude that the trial court did not abuse its discretion in refusing the State's request to withdraw its stipulation. *See Early v. Burns,* 142 S.W.2d 260, 263 (Tex.Civ.App.1940, writ ref'd) (holding that trial court did not err in refusing to set aside stipulations made by counsel for both parties in open court); *Westridge Villa Apartments v. Lakewood Bank & Trust Co.,* 438 S.W.2d 891, 894–95 (Tex.Civ.App.-Fort Worth 1969, writ ref'd n.r.e.) (holding trial court did not abuse its discretion in denying party's motion to withdraw stipulations).

▮ Furthermore, even if the parties had not stipulated to the admission of the exhibits relating to billboard sales from 1995 and 1996, we would not conclude that admission of these exhibits and related testimony was an abuse of discretion. We recognize that Texas law generally discourages the use of remote comparable sales. *See Holiday Inns, Inc. v. State,* 931 S.W.2d 614, 623–24 (Tex.App.-Amarillo 1996, writ denied) (concluding that seven years was too far removed); *Reynolds v. State,* 390 S.W.2d 493, 497–98 (Tex.Civ. App.-Texarkana 1965, no writ) (concluding that the trial court did not abuse its discretion by not admitting testimony about two sales more than five years prior to the taking when five more recent sales were admitted). However, when comparable sales are scarce, the decision of whether a sale offered to establish fair market value is too remote in time to be admissible is left largely to the discretion of the trial court. *See Holiday Inns,* 931 S.W.2d at 623. In *Reynolds,* although two sales were not admitted because they were deemed too remote, there were five other comparable sales on record. 390 S.W.2d

at 497. In contrast, in the case before us, the evidence shows that the 1995 and 1996 sign site sales were two of the four most recent sales of sign sites along IH–610 in the same area as the billboards in question. Even the State's appraiser acknowledged that the 1995 and 1996 sales warranted some consideration in estimating the market value of the Reinas' sign site on IH–610 in 2003. Given the limited number of comparable sales near the Reinas' property, we still would conclude that the trial court did not abuse its discretion in admitting evidence of the 1995 and 1996 billboard sales, even if the State had not entered into the stipulation in question. *See U.S. v. 320.0 Acres of Land, More or Less in Monroe County,* 605 F.2d 762, 798 (5th Cir.1979) (stating that, in eminent domain proceedings, sound trial practice is to admit as many of the "most comparable" sales available as is necessary to fairly permit each side to present its fair market value argument to the jury). We overrule the State's second issue.

Having overruled all issues presented on appeal, we affirm the trial court's judgment.