# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-00473-CV

**E. J., Appellant**

**v.**

**Texas Department of Family and Protective Services, Appellee**

FROM THE DISTRICT COURT OF HAYS COUNTY, 428TH JUDICIAL DISTRICT
NO. 17-409, HONORABLE MELISSA McCLENAHAN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant mother E.J. appeals the trial court's order rendered on the jury's verdict terminating her parental rights to her child J.L.[1]  The jury found that Mother: (1) knowingly placed or knowingly allowed J.L. to remain in conditions or surroundings which endangered J.L.'s physical or emotional well-being; (2) engaged in conduct or knowingly placed J.L. with persons who engaged in conduct which endangered J.L.'s physical or emotional well-being; or (3) has a mental or emotional illness or a mental deficiency rendering her unable to provide for J.L.'s physical, emotional and mental needs, that the illness or deficiency in all reasonable probability will continue to render Mother unable to provide for J.L.'s needs until J.L.'s eighteenth birthday, and that the Department of Family and Protective Services made reasonable efforts to return J.L. to Mother.  *See*

---

[1]  We refer to appellant as Mother and to the child using only initials.  *See* Tex. Fam. Code § 109.002(d); Tex. R. App. P. 9.8(b)(2).

Tex. Fam. Code §§ 161.001(b)(1)(D)–(E), .003. The jury also found that termination of Mother's parental rights was in the child's best interest. *See id.* § 161.001(b)(2).

Mother presents seven issues on appeal, but she does not challenge the findings that termination of her parental rights was warranted on the endangerment grounds set forth in subsections 161.001(b)(1)(D) and (E) of the Family Code and that termination of her parental rights was in the child's best interest. Her appellate issues raise mostly procedural complaints about the trial.[2] Mother contends that the trial court commented indirectly on the credibility of a witness during cross-examination, that the court abused its discretion by setting time limits on direct and cross-examination after trial began, and that the court abused its discretion and violated her due-process rights by disallowing her cross-examination of two witnesses and the presentation of her case in chief when her allotted time expired. Mother further contends that the trial court abused its discretion by disallowing her offers of proof. Finally, Mother requests that if we reverse the order terminating her parental rights, we review the court's appointment of the Department, instead of her, as J.L.'s sole managing conservator. We will affirm the trial court's order of termination.

---

[2]     Mother challenges the sufficiency of the evidence supporting termination under subsection 161.003 of the Family Code. *See* Tex. Fam. Code § 161.003 (authorizing termination of parent-child relationship based on finding of parent's mental or emotional illness or mental deficiency rendering parent unable to provide for child's needs). However, as we discuss in further detail, the unchallenged findings that termination of Mother's parental rights was warranted under subsections 161.001(b)(1)(D) and (E) and that termination was in the child's best interest are sufficient to support the court's termination order, irrespective of a finding under subsection 161.003. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *Spurck v. Texas Dep't of Family & Protective Servs.*, 396 S.W.3d 205, 221 (Tex. App.—Austin 2013, no pet.); *see also B. H.-L. v. Texas Dep't of Family & Protective Servs.*, No. 03-17-00772-CV, 2018 Tex. App. LEXIS 1818, at *2–3 (Tex. App.—Austin Mar. 13, 2018, no pet.) (mem. op.).

## BACKGROUND[3]

Several witnesses testified during the weeklong jury trial in the underlying case including Mother; J.L.'s father, R.L.; Mother's stepson; J.L.'s paternal cousin and current placement; J.L.'s former first-grade teacher; a surgeon and an emergency room physician who both treated J.L.; Texas Department of Family and Protective Services staff; a Court Appointed Special Advocate supervisor; a psychologist who evaluated Mother and diagnosed her with a personality disorder with borderline features; and a psychiatrist who treated Mother and rendered a provisional diagnosis of paranoid personality disorder.

The evidence showed that Mother and Father are the unmarried biological parents of J.L., who was born June 24, 2007, and that Mother and Father separated in 2009. In 2017, the Department removed J.L. from Mother due to allegations of Mother's medical neglect. Mother testified that she went to Dell Children's Hospital on a referral from Central Texas Medical Center to see a hand surgeon for J.L.'s finger. However, she and J.L. left the hospital and went home after Mother became agitated with a doctor who she claimed "made fun of" her theory that both she and J.L. had "Morgellons," a controversial condition of their skin that Mother researched on the Web.[4] Mother testified that J.L. had no need for antibiotics, that J.L.'s finger would heal itself, and that the

---

[3] The facts are summarized from the testimony at trial. The court reporter has informed us that Mother's counsel decided an exhibit volume was unnecessary for inclusion in the reporter's record. We presume that the partial reporter's record constitutes the entire record for purposes of reviewing Mother's appellate issues. *See* Tex. R. App. P. 34.6(c)(4).

[4] Mother told both the psychologist and the psychiatrist who saw her that Morgellons was caused by contrails from aircraft flights. The psychologist testified that Morgellons disease is "a largely psychiatric disorder where the individual has delusions that they are infected with fibers and string-like parasites and multiple organisms."

3

referral to Dell Children's Hospital did not mean that J.L. needed surgery. Later that day, Child Protective Services, law enforcement, and two emergency medical technicians went to Mother's house and removed J.L., returning her to Dell Children's Hospital for medical treatment, which was said to have saved J.L.'s finger. Mother testified that she did not seek care from any medical professionals for J.L. between the time that she and J.L. left the hospital and when CPS, law enforcement, and the two EMTs arrived.

At the conclusion of the trial, the jury returned its verdict terminating Mother's parental rights to J.L. and appointing the Department as J.L.'s sole managing conservator. The trial court rendered an order of termination on the jury's verdict. This appeal followed.

## DISCUSSION

**First issue: Court's statement during cross-examination**

In her first issue, Mother complains about a statement by the court during the cross-examination of Tiffany Lopez, who was testifying about her recollection of events from almost five years earlier when she was J.L.'s first-grade teacher. Mother contends that when the court said, "Clearly it was a misunderstanding," the court made an indirect comment on Lopez's credibility and gave the jury the false impression that Lopez was confused. Mother further contends that the court's statement denied her the right to fully cross-examine Lopez by "rehabilitating" her and blocking further impeachment.[5] The complained-of statement arose during this exchange:

---

[5] Within this issue, Mother also complains about the court's alleged admission into evidence of photographs. However, Mother makes no citation to the record showing admission of such photographs and no exhibit volume was provided on appeal; thus, she presents nothing for our review of this complaint. *See* Tex. R. App. P. 34.6(c)(4) (presumptions on partial reporter's record),

[Counsel:] Ma'am, specifically do you recall when I was questioning you I asked you if you could recall any specifics about talking with [Mother] and how—or what she wasn't receptive to? Do you remember I asked that question?

[Lopez:] I believe you asked about specific dates.

[Counsel:] No. Specifics about what she wasn't being receptive to. Do you recall that question?

[Lopez:] I don't—I'm not sure. There's been a lot of questions. I'm not sure of that exact one. Sorry.

[Counsel:] Okay. Do you recall me asking that and you said you couldn't recall any specifics?

[Lopez:] I think you—at that same time you were asking me about dates or when it was exactly during the year.

[Counsel:] Do you need—do you want the court reporter to read it back?

[Lopez:] If you feel it's necessary. I'm doing the best I can.

[The Court]: *Clearly it was a misunderstanding.* Do you want to ask her again and see if she's got a different answer?

[Counsel]: No, ma'am. I would like the court reporter to read back the question.

Mother asks us to apply article 38.05 of the Code of Criminal Procedure—directing a trial judge not to "make any remark calculated to convey to the jury his opinion of the case" before a verdict—and cites cases addressing that statute. *See* Tex. Code Crim. Proc. art. 38.05; *Simon v. State*, 203 S.W.3d 581 (Tex. App.—Houston [14th Dist.] 2006, no pet.); *Clark v. State*, 878 S.W.2d 224 (Tex. App.—Dallas 1994, no pet.); *Bachus v. State*, 803 S.W.2d 402 (Tex. App.—Dallas 1991,

38.1(i) (requiring briefs to contain "clear and concise argument for the contentions made, with appropriate citations to authorities and to the record").

5

pet. ref'd). She contends that "[b]ecause the rights and parties involved in this litigation are similar to those involved in a criminal case, it would be unjust not to apply this prohibition on commentary from the bench in this termination proceeding." However, even if we were persuaded to apply that criminal-procedure statute to this civil case, Mother did not preserve error as to the complained-of statement. *See* Tex. R. App. P. 33.1(a)(1) (requiring timely request, objection, or motion to trial court as part of preserving complaint for appellate review); *see also, e.g.*, *Simon*, 203 S.W.3d at 590–91 (stating that court would "examine the propriety of the following comments as to which appellant preserved error" and showing counsel's contemporaneous objections to court's complained-of comments); *Clark*, 878 S.W.2d at 225 (noting that trial court overruled counsel's objection, raised before voir dire, to any mention by court that appellant had prior alleged convictions); *Bachus*, 803 S.W.2d at 404 (noting that "Appellant immediately objected to the trial court's statement [that there was evidence of conspiracy] as being a comment on the evidence").

Without citation to the record, Mother's counsel contends that she objected by "stating that the court, in commenting on the credibility of the witness, was invading the province of the jury." That reference is to a complaint Mother's counsel made during trial the next day when she was requesting a mistrial and the judge's recusal, neither of which constituted a timely objection to the judge's complained-of statement from the day before. *See* Tex. R. App. P. 33.1(a)(1); *In re I.C.*, No. 02-15-00300-CV, 2016 Tex. App. LEXIS 3643, at *34 (Tex. App.—Fort Worth Apr. 7, 2016, no pet.) (mem. op.) (concluding that parent failed to preserve error by failing to object to judge's alleged comments on credibility of witness and that motion to recuse judge and motion for mistrial filed next day were not timely to preserve her complaint about trial court's comments).

6

Because Mother failed to preserve any appellate complaint about the judge's statement, we overrule her first issue.

**Second and fourth issues: Time limitations and effect on presentation of case in chief**

In her second issue, Mother complains that the court abused its discretion by setting time limits on direct and cross-examination after trial began. In her related fourth issue, Mother complains that the court abused its discretion and violated Mother's due-process rights by disallowing the presentation of Mother's case in chief when her time expired.

The first witness called was questioned by Mother's counsel for over four hours. Outside the presence of the jury, the court cautioned counsel that the witness was "at maximum, a 45-minute witness" and that the court was considering time limits because "we can't do this for every darn witness that gets called."[6] The court noted that Mother's counsel had asked the same question "over and over and over again." Mother's counsel stated that the proceeding was a "termination trial" and told the court, "I will not be restricted on how many questions I ask the witness."

The next day, after Mother's counsel spent over three hours questioning another witness, the court informed counsel outside the presence of the jury that time limits would be imposed and asked counsel to confer over the lunch recess to explore agreement on the matter. Mother's counsel replied, "Judge, I can tell you right now I'm not going to limit my cross-examination, nor am I going to limit my case in chief when we are talking about terminating

_____

[6] The total questioning of that first witness, Tiffany Lopez, spans 155 pages of the reporter's record. Her testimony began the second day of trial because the first day was spent on jury selection.

7

parental rights." After the recess, the court imposed time limits on all parties as to the presentation of their evidence and their cross-examination of witnesses. Based on the announcement to the jury that the trial would take one week, the court calculated that after spending a day on jury selection and reserving an additional day for closing and deliberations, five days or 35 hours remained for testimony. The court stated that such time would be split three ways, with the Department and Mother each receiving one-third, and Father and the attorney ad litem sharing one-third between them. Mother's counsel objected to the time limitations as a violation of Mother's right to due process and her right to cross-examine witnesses.

On multiple occasions during trial, the court advised counsel about how much time they had used and how much time they had remaining. When Mother's counsel protested about "any time limit as to this trial" and asked the court to lift the time restrictions, the court reminded her of the parties' role in making the promise to the jury about the length of time for the trial:

> I believe the Court has been very open and clear with everyone, including the jury when they were selected; you-all helped make that promise to them that they would be here five days, a week. And I've talked to you about going over a little bit to seven days so we can call it a full week if you want to. . . . Now, you have been warned on a number of occasions outside the presence of the jury, on the record and off the record, of how much time you were using. You chose to utilize your time the way that you have with cross examinations that have gone on and on and on to the point of harassing witnesses. And the law allows me to prevent that from happening, to ensure that the jury isn't overburdened by their time, and that's the decision I made and I'm sticking with my decision.

Mother's counsel used her time in cross-examining all but two of the Department's witnesses—the CASA supervisor, who was being cross-examined when Mother's time expired, and Mother—and then made closing argument. Mother acknowledges that when her allotted time

8

expired, her counsel did not request additional time to cross-examine witnesses and put on her case.

We review a trial court's imposition of time limits at trial, and the exclusion of evidence due to the imposition of time limits, using an abuse-of-discretion standard. *In re M.A.S.*, 233 S.W.3d 915, 924 (Tex. App.—Dallas 2007, pet. denied); *State v. Reina*, 218 S.W.3d 247, 250 (Tex. App.—Houston [14th Dist.] 2007, no pet.); *see Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 240–41 (Tex. 2001) (cleaned up) (stating that "the discretion vested in the trial court over the conduct of a trial is great" and that trial courts "may properly intervene to maintain control in the courtroom, to expedite the trial, and to prevent what it considers to be a waste of time"); *see also* Tex. R. Evid. 611(a) ("The court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to: (1) make those procedures effective for determining the truth; (2) avoid wasting time; and (3) protect witnesses from harassment or undue embarrassment."); *M.A.S.*, 233 S.W.3d at 924 (noting that trial court should exercise reasonable control over presentation of evidence). A trial court does not abuse its discretion unless it acts in an arbitrary and unreasonable manner. *Reina*, 218 S.W.3d at 250.

Here, the record reflects that the trial court's imposition of time limits was not arbitrary and unreasonable. Before imposing time limits on the parties, the court cautioned Mother's counsel about the hours she had spent on repetitive cross-examination with the first witness and stated that such pace was not sustainable. Nevertheless, the next day Mother's counsel again conducted an hours-long cross-examination that took the entire morning, and afterward she stated to the court, "I can tell you right now I'm not going to limit my cross-examination, nor am I going to limit my case in chief." The court stated that the imposition of the time limit was merely

9

enforcement of the promise that "you-all helped make" to the jury about a weeklong trial.[7]  As Mother acknowledges, when trial courts have set time limits with the input of parties and then held parties to those time limits, reviewing courts have not found a denial of a fair trial.  *See, e.g.*, *Reina*, 218 S.W.3d at 254–56; *Irwin v. Atlas Truck Line, Inc.*, 517 S.W.2d 637, 640 (Tex. App.—Houston [14th Dist.] 1974, writ ref'd n.r.e.).  Mother did not request additional time to cross-examine witnesses and put on her case; rather, she stated that she would object to "any time limit" on the trial.  On this record, we conclude that Mother has not shown the trial court acted in an arbitrary and unreasonable manner by setting time limitations after trial began.

Further, when a trial court limits the amount of time a party has to present its case, and thereby prevents a party from presenting all of its evidence, the party must object to the time limit and make an offer of proof of the evidence it was prevented from presenting to preserve error on appeal.  *Goss v. Goss*, No. 04-16-00809-CV, 2018 Tex. App. LEXIS 246, at *4 (Tex. App.—San Antonio Jan. 10, 2018, pet. denied) (mem. op.); *In re Ludington*, No. 01-16-00411-CV, 2017 Tex. App. LEXIS 458, at *11 (Tex. App.—Houston [1st Dist.] Jan. 19, 2017, orig. proceeding) (mem. op.); *In re A.E.A.*, 406 S.W.3d 404, 420 (Tex. App.—Fort Worth 2013, no pet.); *Health Enrichment & Longevity Inst., Inc. v. State*, No. 03-03-00578-CV, 2004 Tex. App. LEXIS 6246, at *14–15 (Tex. App.—Austin July 15, 2004, no pet.) (mem. op.) ("Assuming that the effect of the time limit was to exclude evidence, error may not be predicated on a ruling excluding evidence unless a party makes known to the court the substance of the evidence by an offer of proof.").

---

[7] The excerpted reporter's record provided to us does not include the first day of trial or the parties' announcements.

Here, Mother objected to the time limits imposed during trial but—as we discuss further in her fifth issue—she did not make either an offer of proof at trial or a post-trial bill of exception setting forth the evidence excluded because of time constraints. *See Health Enrichment & Longevity Inst.*, 2004 Tex. App. LEXIS 6246, at *15; *see also* Tex. R. App. P. 33.2 (addressing formal bills of exception); *Askew v. State*, No. 03-03-00661-CV, 2005 Tex. App. LEXIS 451, at *7 (Tex. App.—Austin Jan. 21, 2005, no pet.) (mem. op.). Thus, Mother has failed to preserve for appellate review her complaint that the court abused its discretion and violated her due-process rights by disallowing the presentation of her case in chief when her time expired. *See Goss*, 2018 Tex. App. LEXIS 246, at *4; *Ludington*, 2017 Tex. App. LEXIS 458, at *11; *A.E.A.*, 406 S.W.3d at 420; *Health Enrichment & Longevity Inst.*, 2004 Tex. App. LEXIS 6246, at *15. We overrule Mother's second and fourth issues.

**Third issue: Cross-examination of two of Department's witnesses**

In her third issue, Mother contends that the trial court abused its discretion and violated her due-process rights by disallowing cross-examination of the Department's, Father's, and attorney ad litem's witnesses. However, Father and the attorney ad litem did not call any witnesses at trial. Mother's counsel cross-examined all but two of the Department's witnesses: the CASA supervisor, who was being cross-examined when Mother's time expired, and Mother.

Mother's entire reference to her third issue in the argument section of her brief consists of this heading: "Did the trial court abuse its discretion by not allowing [Mother] to cross examine all of the petitioner's, the respondent father's or the attorney ad litem's witnesses, thus violating her due process rights?" Mother failed to brief this issue. *See* Tex. R. App. P. 38.1(i)

11

(requiring briefs to contain "clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"). "Bare assertions of error without argument or authority waive error." *Liberty Mut. Ins. Co. v. Griesing*, 150 S.W.3d 640, 648 (Tex. App.—Austin 2004, pet. dism'd w.o.j.); *see In re R.H.W.*, 542 S.W.3d 724, 742 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (concluding that parent failed to preserve his complaint that trial court abused its discretion in excluding certain evidence by failing to adequately brief any argument in support of his issue); *I.C.*, 2016 Tex. App. LEXIS 3643, at *37 (concluding that parent failed to preserve his complaints that he was denied fair trial and due process by failing to cite any legal authority for his contentions). We overrule Mother's third issue.

**Fifth issue: Offers of proof**

In her fifth issue, Mother contends that the trial court abused its discretion by disallowing her offers of proof. However, even if Mother was unable to make any offer of proof at trial, she was not prevented from making a formal bill of exception after trial setting forth the proposed witness testimony for appellate review. *See* Tex. R. App. P. 33.2 (addressing formal bills of exception); *Askew*, 2005 Tex. App. LEXIS 451, at *7 ("Although the court made clear that it did not have time for Askew to make a bill of exception on the day of trial, Askew had until 30 days after filing the notice of appeal to make a formal, written bill of exception. Askew did not file a formal bill of exception showing who she would have called and what their testimony would have been. Askew has not preserved this error for review.") (cleaned up); *see also Bobbora v. Unitrin Ins. Servs.*, 255 S.W.3d 331, 335 (Tex. App.—Dallas 2008, no pet.) (noting that if no offer of proof is made before trial court, party must introduce excluded testimony into record by formal bill of

exception); *cf. Clifton v. State*, No. 05-09-00006-CR, 2009 Tex. App. LEXIS 8199, at \*17 (Tex. App.—Dallas Oct. 23, 2009, no pet.) (mem. op., not designated for publication) ("Assuming without deciding, the trial court erred [by not allowing Clifton to make an offer of proof], the issue is not properly preserved for appeal because Clifton did not file a formal bill of exception. As such, he is precluded from complaining on appeal 'about any matter that would not otherwise appear in the record.'" (citing Tex. R. App. P. 33.2)).

Because Mother did not make a post-trial bill of exception, she failed to preserve this appellate complaint. We overrule her fifth issue.

**Sixth issue: Sufficiency of evidence supporting termination under subsection 161.003**

In her sixth issue, Mother challenges the factual and legal sufficiency of the evidence supporting the jury's finding under subsection 161.003 of the Family Code. *See* Tex. Fam. Code § 161.003 (authorizing termination of parent-child relationship based on finding of parent's mental or emotional illness or mental deficiency rendering parent unable to provide for child's needs). Only one statutory ground is necessary to support a judgment terminating parental rights. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *Spurck v. Texas Dep't of Family & Protective Servs.*, 396 S.W.3d 205, 221 (Tex. App.—Austin 2013, no pet.). Accordingly, when multiple statutory grounds for termination are alleged and the trial court issues a broad-form question asking the jury whether the parent-child relationship should be terminated, we must uphold the jury's finding if any of the statutory grounds alleged supports it. *Spurck*, 396 S.W.3d at 221.

Here, Mother does not challenge the sufficiency of the evidence supporting the termination of her parental rights under the endangerment grounds in subsections 161.001(b)(1)(D)

13

and (E) of the Family Code, nor does she challenge the jury's finding that termination was in the best interest of the child. *See* Tex. Fam. Code §§ 161.001(b)(1)(D)–(E), (2). Accordingly, Mother has waived any challenge she might have had to those findings. *See Toliver v. Texas Dep't of Family & Protective Servs.*, 217 S.W.3d 85, 102 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (concluding that father waived any complaint about evidentiary sufficiency for three predicate findings by failing to challenge evidentiary sufficiency as to those findings); *see also B. H.-L. v. Texas Dep't of Family & Protective Servs.*, No. 03-17-00772-CV, 2018 Tex. App. LEXIS 1818, at *1–2 (Tex. App.—Austin Mar. 13, 2018, no pet.) (mem. op.) (concluding that father waived any complaint about evidentiary sufficiency for one predicate finding by failing to challenge evidentiary sufficiency as to that finding). Here, the unchallenged findings that termination of Mother's parental rights was warranted under subsections 161.001(b)(1)(D) and (E), and that termination was in the child's best interest are sufficient to support the court's termination order. *See A.V.*, 113 S.W.3d at 362; *B. H.-L.*, 2018 Tex. App. LEXIS 1818, at *2–3 (unchallenged findings that parent committed conduct satisfying one predicate ground for termination and that termination was in children's best interest were sufficient to support termination order); *In re C.C.*, No. 12-17-00114-CV, 2017 Tex. App. LEXIS 6036, at *11 (Tex. App.—Tyler June 30, 2017, no pet.) (mem. op.) (unchallenged finding that termination of father's parental rights was in children's best interest combined with unchallenged predicate grounds for termination sufficed to support court's judgment). Thus, we overrule Mother's sixth issue.

**Seventh issue: Appointing the Department as J.L.'s sole managing conservator**

In her seventh and final issue, Mother conditionally requests that if we reverse the order terminating her parental rights, we review the court's appointment of the Department, instead

14

of her, as J.L.'s sole managing conservator.  Because we do not reverse the order of termination, we need not reach this issue.

## CONCLUSION

We affirm the trial court's order of termination.

_____
Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Field and Toth

Affirmed

Filed:   December 18, 2018

15