**Affirmed and Memorandum Opinion filed July 27, 2021.**



In The

# Fourteenth Court of Appeals

_____

### NO. 14-20-00109-CV

_____

### D. A. I., Appellant

### V.

### J. P. L., Appellee

_____

**On Appeal from the 425th Judicial District Court
Williamson County, Texas
Trial Court Cause No. 09-3158-F425**

_____

## M E M O R A N D U M   O P I N I O N

In this appeal from a final order modifying conservatorship of the parties' minor child, Mother argues that the trial court erred in failing to loosen a geographic restriction on her choice of the child's primary residence and instead granting Father's cross-petition to be given the exclusive right to choose the child's primary

residence. *See* TEX. FAM. CODE ANN. § 109.002(b). Mother also contends that the trial court erred in limiting the time for the parties to present their cases. We affirm.[1]

## I. BACKGROUND

When Mother and Father divorced in 2010, Ana[2] was four years old. Ana's parents were named joint managing conservators, with Mother having the exclusive right to designate Ana's primary residence, which was to be in either Williamson County or Hays County. Eight years later, Mother petitioned the trial court to modify the original orders to increase Father's child-support payments and to allow Mother to designate Ana's primary residence in Williamson County or any county contiguous to Williamson County. Father filed a counter-petition in which he asked for the exclusive right to designate Ana's primary residence, with the child's residence restricted to Williamson County, and for child support to be paid by Mother.

At trial, each side was given thirty-five minutes to present its case. Mother testified that Ana attends Jarell Independent School District and has good grades and lots of friends. Ana runs track and plays volleyball, basketball, and softball. Until 2017, Ana played "Select" softball, where Father was her assistant coach, and she raised and exhibited farm animals.

In January 2018, when Mother was expecting her third child, she began looking in the Jarrell school district for a new home large enough for her growing family and with sufficient acreage to allow Ana to continue raising and showing

---

[1] The case was transferred to this Court from the Third Court of Appeals in Austin pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001. Because this is a transfer case, we apply the precedent of the Third Court of Appeals to the extent it differs from our own. *See* TEX. R. APP. P. 41.3.

[2] To increase readability while protecting the child's identity, we refer to her by a pseudonym.

farm animals. She was unable to find affordable acreage in Williamson County. Mother had a "handshake deal" in March 2018 to buy a one-acre property in Jarrell, but the seller changed his mind in July 2018.

In November 2018, Mother sold her home in Jarrell, and for the next month and a half, Ana lived with her Mother, her stepfather, and Mother's two other children in a travel trailer in Jarrell so that Mother could try to keep Ana in the Jarrell school district.

The family next moved to the Georgetown home of Mother's parents and grandmother. There, Ana, her mother, her stepfather, and Mother's two other children share two bedrooms among the five of them. As a result of the move to Georgetown, the Jarell school district considers Ana a transfer student, and Ana must reapply for transfer status each year.

Although Mother's parents' home has acreage that would allow Ana to resume raising farm animals, Mother does not want to continue living with her parents forever, so she bought land in the city of Bertram in neighboring Burnet County. The property is about 4.5 miles outside of Williamson County. When the case was tried in August 2019, Mother had not begun constructing a house on the Bertram property, choosing instead to await the ruling on the cross-petitions for modification. If Mother moved to Bertram, Ana would attend a school in Burnet Consolidated Independent School District; one of Mother's other children already attends school in Bertram. Mother testified that the school in Burnet County is comparable to Ana's Jarrell school, but it is about 39.8 miles from Father's home in Georgetown.

The agreed possession schedule at that time provided that one week Father would have Ana from after school on Thursday until Monday morning, and the next week he would have her from after school on Wednesday until Friday morning, but

Mother's proposed modification would eliminate Father's Wednesday-to-Friday possession. Mother testified that she never discussed the proposed move with Father because she knew he would not be happy. She stated her communications with him were "[v]ery minimal" because she usually talks to Father's wife.

Mother did not know what she would do if the geographic restriction were not modified to allow her to designate Ana's primary residence in a county adjacent to Williamson County, but she stated she probably would rent an apartment in Jarrell until she figured something else out.

Father testified that Ana's current school is a fifteen-minute drive from his home in Georgetown, but the school in Burnet County is fifty-five minutes away. Under Mother's proposed modification, Ana would have to travel an additional hour to Father's house during his possession weekends, and she would have to get up an hour earlier to return to school on Monday morning. Father stated that he currently takes Ana to volleyball practice at 6:45 a.m., but he would not be able to do so if Ana attended school in Burnet County.

Father stated that he intends to keep Ana in Jarrell Independent School District, and if she could not remain there as a transfer student, Father would buy a house in that school district. He explained that Ana plays basketball and softball at the Georgetown Rec Center, where he continues to act informally as an assistant coach for Ana's teams. Father also stated that he could provide land for Ana to continue raising animals for exhibition by using his mother's ten acres or his uncle's thirty acres; both properties lie between Georgetown and Hutto, that is, in Williamson County. Mother and Father disagreed about whether the rules under which Ana exhibits animals allow her to raise an animal on land where she does not reside.

4

Finally, Father testified that his extended family lives in Williamson County, and Mother's extended family lives either in Williamson County or in Austin; the only family in Burnet County is the family of Mother's husband. Ana's pediatrician, dentist, and allergist also are located in Williamson County.

After both parties rested, the trial court spoke privately to Ana to determine her wishes.[3] Neither parent asked that a record be made of the interview.

The trial court denied Mother's petition and granted Father most of the relief he requested in his counter-petition. Father was given the exclusive right to designate Ana's primary residence, which was restricted to Williamson County, and Mother was ordered to pay child support. Mother's motion for new trial was overruled by operation of law.

In her first two appellate issues, Mother challenges the trial court's ruling denying her petition to modify the geographical restriction and granting Father's requested modification of conservatorship. In her third issue, she challenges the trial court's limitation of the time for each side to present its case.

## II. MODIFICATION OF CONSERVATORSHIP

Where, as here, no findings of fact and conclusions of law were issued or requested, we presume the trial court made all the findings necessary to support the judgment. *See Ad Villarai, LLC v. Chan Il Pak*, 519 S.W.3d 132, 135 (Tex. 2017) (per curiam). A party may rebut the presumption by demonstrating that the record evidence does not support a presumed finding. *Id.*

The presumed findings in this case are those required by statute: a trial court may modify an order specifying the terms and conditions of conservatorship if the modification would be in the child's best interest, and (1) the circumstances of the

---

[3] *See* TEX. FAM. CODE ANN. § 153.009.

5

child, a conservator, or other party affected by the order have materially and substantially changed since the earlier of the date of the order's rendition or the date of the signing of a mediated or collaborative law settlement agreement on which the order is based; (2) the child is at least twelve years old and has expressed to the court in chambers the name of the person the child prefers to have the exclusive right to designate the child's primary residence; or (3) the conservator with the exclusive right to designate the child's primary residence has voluntarily relinquished the primary care or possession of the child for at least six months, unless the relinquishment was during the conservator's military deployment, military mobilization, or temporary military duty. TEX. FAM. CODE ANN. § 156.101.

When reviewing an order modifying conservatorship, we apply the abuse-of-discretion standard. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982). A trial court abuses its discretion when it acts arbitrarily or unreasonably, without reference to guiding rules or principles. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam). The trial court does not abuse its discretion so long as some substantive and probative evidence supports the trial court's decision. *Zeifman v. Michels*, 212 S.W.3d 582, 587 (Tex. App.—Austin 2006, pet. denied).

To apply the abuse-of-discretion standard, we ask, first, whether the trial court had sufficient evidence on which to exercise its discretion, and second, whether the trial court erred in applying its discretion. *Id.* at 588. Under this standard, legal and factual insufficiency are not independent grounds for reversal but instead are relevant factors in answering the first question. *Id.* at 587.

To determine whether the evidence of a fact is legally insufficient, we review the record in the light most favorable to the challenged finding, crediting evidence supporting the finding if a reasonable factfinder could do so, and disregarding contrary evidence unless a reasonable factfinder could not. *City of Keller v. Wilson*,

6

168 S.W.3d 802, 827 (Tex. 2005). Evidence is legally insufficient to support a finding of fact if (a) there is a complete absence of supporting evidence, (b) the court is barred by rules of law or of evidence from the only evidence offered to prove the fact, (c) there is no more than a scintilla of evidence to prove the fact, or (d) the evidence conclusively establishes the opposite of the fact. *Id.* at 810. When reviewing for factual sufficiency, we consider all of the evidence in a neutral light to determine whether the finding is so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam).

Under any standard of review, the factfinder is the sole judge of the witnesses' credibility and the weight to be given to their testimony. *N.E. Indep. Sch. Dist. v. Riou*, 598 S.W.3d 243, 255 n.50 (Tex. 2020).

Having established the statutory requirements and standard of review applicable to orders modifying conservatorship, we begin our analysis with Mother's second issue, in which she argues that the trial court abused its discretion in granting Father's proposed modification. If Mother fails to establish that the trial court abused its discretion in this respect, then it will be unnecessary to address Mother's first issue, in which she argues that the trial court's failure to grant her requested modification was an abuse of discretion because she supported her request with legally and factually sufficient evidence.

## A.    Material and Substantial Change of Circumstance

Mother first contends that Father failed to prove a material and substantial change of circumstance. She asserts that the trial court lacked sufficient information on which to exercise its discretion because Father failed to offer evidence of the conditions that existed when the prior conservatorship order was rendered and to demonstrate the material and substantial changed circumstances existing at the time

of the modification hearing. *See Zeifman*, 212 S.W.3d at 589; *Ceniseros v. Rychlik*, No. 03-17-00532-CV, 2018 WL 4265679, at \*4 (Tex. App.—Austin Sept. 7, 2018, no pet.) (mem. op.); *see* TEX. FAM. CODE ANN. § 156.101 (grounds for modification of conservatorship, possession and access, or determination of residence).

Here, however, Father was not required to prove a change of circumstance, because both Mother and Father asserted in their respective pleadings that "[t]he circumstances of the child, a conservator, or other party affected by the order to be modified have materially and substantially changed since the date of the rendition of the order to be modified." Under the law applicable to this case, such an allegation is a judicial admission of a material and substantial change. *See, e.g.*, *In re A.L.H.*, 515 S.W.3d 60, 81 n.5 (Tex. App.—Houston [14th Dist.] 2017, pet. denied); *Filla v. Filla*, No. 03-14-00502-CV, 2016 WL 4177236, at \*4 (Tex. App.—Austin Aug. 5, 2016, pet. denied) (mem. op.) ("If an appellant filed her own petition to modify in the trial court and alleged a material and substantial change in circumstances, her allegation constitutes a judicial admission that a material and substantial change occurred.").[4] A judicial admission is conclusive on the party making it, and it both relieves the party's adversary of the need to prove the admitted fact and bars the party making the admission from disputing it. *See Gevinson v. Manhattan Constr. Co. of Okla.*, 449 S.W.2d 458, 466 (Tex. 1969).

These mutual judicial admissions conclusively establish that the circumstances of the child, a conservator or other party affected by the previous conservatorship order materially and substantially changed after the prior conservatorship order was rendered in 2010.

---

[4] A party who files a motion to modify the terms of conservatorship on or after September 1, 2021, cannot "be considered on that basis alone to have admitted a material and substantial change of circumstances regarding any other matter." Act of May 19, 2021, 87th Leg., R.S., H.B. 851, § 2 (to be codified as TEX. FAM. CODE § 156.007).

**B.    Child's Best Interest**

Mother next contends that, "[t]he issue of the geographical restriction aside," no evidence supports a finding that the modification of conservatorship is in Ana's best interest. By this, we understand Mother to challenge the implied finding that it is in Ana's best interest for Father to be the joint managing conservator with the exclusive right to designate Ana's primary residence.

A trial court has wide latitude in determining a child's best interest. *Gillespie*, 644 S.W.2d at 451. Factors a trial court may consider include, but are not limited to,

- the child's desires;
- the child's present and future emotional and physical needs;
- any present or future emotional or physical danger to the child;
- the parties' parental abilities;
- the programs available to assist individuals seeking custody to promote the child's best interest;
- the parties' plans for the child;
- the stability of the home;
- the acts or omissions of a parent, which may indicate that the existing parent-child relationship is not a proper one; and
- any excuse for a parent's acts or omissions.

*Zeifman*, 212 S.W.3d at 595 (citing *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976)). The factfinder is not required to consider every factor, and although no single one is controlling, the presence of a single factor may, in some instances, be sufficient to support a best-interest finding. *Ceniseros*, 2018 WL 4265679, at *5.

Of these factors, the evidence shows that Mother has the less stable home. Mother sold her home when her family outgrew it and began looking for a property

9

"of at least two acres, just over twice the size of the property they were selling." Unable to afford suitable property in Williamson County, her family of five first shared a travel trailer and now shares two bedrooms in the home of Mother's parents. Mother then bought land in Burnet County with the intention of moving there, but there is not a house on the property, and Mother "made no plans to build a home, during the pendency of the case." Mother also admitted that she did not know what she would do if the geographic restriction were not modified to allow her to designate a primary residence for Ana in Burnet County, but Mother stated she would probably rent an apartment in Jarell until she figured something else out. This would be Mother's third interim housing since selling her home.

Regarding the parties' plans for Ana, Father's plan arguably offers Ana greater continuity. Father would keep Ana in the same school district that she has always attended, whereas Mother would move Ana to a new school district. In addition, under the pre-existing possession schedule, Ana stayed with Father four nights of a regular week in the school year, then two nights of the next week, whereas under Mother's plan, Ana's time with Father would have been reduced to four nights on alternating weeks.

These factors are some evidence of a substantive and probative character supporting the trial court's decision; thus, we conclude that the trial court did not abuse its discretion in modifying the conservatorship order to give Father the exclusive right to designate Ana's primary residence. We overrule Mother's second issue.

In light of our disposition of this issue, it is unnecessary to consider Mother's first issue, in which she challenges the trial court's denial of her request to modify the geographical restriction to include the counties bordering Williamson County.

10

### III. TIME LIMITS AT TRIAL

In her third issue, Mother challenges the time limitation on the presentation of her case. After opening arguments on the trial of the issues, the trial court informed the parties that each side would have thirty-five minutes to present its case, adding, "If we get to the end of that hour and ten minutes and I feel like I need to hear more, I will let you all know." The trial court did not extend the time limits.

On appeal, Mother acknowledges that the trial court has the authority to "exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to . . . avoid wasting time." TEX. R. EVID. 611(a)(2). She nevertheless asserts that the trial court's authority "does not extend to a sua sponte restraint of the time allowed for a hearing," at least "without the prior agreement or knowledge of the parties." She cites no authority supporting this assertion.

We conclude that Mother failed to preserve this complaint. If a party has a complaint about the time limits imposed by the trial court, it is "incumbent upon [the complaining party] to make its objection known at the time." *J.E. v. Tex. Dep't of Family & Protective Servs*., No. 03-14-00164-CV, 2014 WL 4536569, at *4 (Tex. App.—Austin Sept. 10, 2014, no pet.) (mem. op.) (quoting *State v. Reina*, 218 S.W.3d 247, 254 (Tex. App.—Houston [14th Dist.] 2007, no pet.)) (alteration in original); *see* TEX. R. APP. P. 33.1(a) (preservation of appellate complaints). Mother's counsel neither objected when the time restraint was imposed nor requested additional time after using the time allotted.

We overrule Mother's third issue.

### IV. CONCLUSION

We conclude that the trial court did not abuse its discretion in modifying the prior conservatorship order to appoint Father as the joint managing conservator with

the exclusive right to designate Ana's primary residence. Mother's remaining issues either are unnecessary to our disposition of this appeal or were not preserved in the trial court. Thus, we affirm the trial court's final order modifying conservatorship of the parties' minor child.

/s/    Tracy Christopher
Chief Justice

Panel consists of Chief Justice Christopher and Justices Spain and Wilson.